**UNITED STATES of America,**

**v.**

**C. Parke MASTERSON and Joseph Lavorata, Defendants.**

United States District Court
S. D. New York.

Feb. 2, 1966.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, for plaintiff.

Arnold D. Roseman, New York City, for defendant.

CANNELLA, District Judge.

Motion by the defendants, C. Parke Masterson and Joseph Lavorata, for an order directing the suppression and return of evidence, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, is denied.

On March 12, 1965, both defendants were indicted by the grand jury in indictment 65 Cr. 224, containing thirteen counts. Counts 1 through 9 inclusive, charge the defendants with knowingly and fraudulently overstating the sales and accounts receivable, in the profit and loss statement of Twin Lock Inc., a corporation in bankruptcy. 18 U.S.C. §§ 152,2. In counts 10 through 12, the defendants are charged with knowingly and fraudulently falsifying entries on invoices dated February 7, 1963 and May 20, 1963. 18 U.S.C. §§ 152,2. Count 13 charges the existence of a conspiracy between Masterson and Lavorata to violate the provisions of 18 U.S.C. § 152.

After pleading not guilty, and after an adjudication of their motion for a bill of particulars was rendered by Judge Palmieri, the defendants changed their counsel and thereafter moved to suppress as evidence corporate records of Twin Lock, Inc. which allegedly were improperly taken by representatives of the Trustee in Bankruptcy of that corporation. The motion was initially made to Judge Tyler on July 26, 1965, who adjourned the matter for one week to permit the movant to cure the obvious hearsay deficiencies in the supporting affidavits. On August 3, 1965 the motion was argued before Judge MacMahon, who on September 14, 1965, similarly denied the motion without prejudice to a renewal "upon affidavits stating facts by persons having knowledge of them." The motion was renewed and is presently before this court.

Preliminarily, a recitation of the facts preceding the seizure of the corporate records would appear to be prerequisite to an adequate understanding of the issues presented. In this regard, the government contends, *inter alia*, that the present affidavits suffer from the same deficiency, viz. the lack of personal knowledge on the part of the affiants as to many of the stated facts, as the affidavits submitted to Judges Tyler and MacMahon. The merit to this position need not be explored in view of this court's ultimate determination that, even accepting the defendants' rendition of the facts in toto, they are not entitled to the requested relief.[1]

In 1956, the defendant Lavorata purchased stock in Twin Lock, Inc. a Delaware corporation formed for the purpose of acquiring a patented electronic device utilized by missile manufacturers. The purchase was effected through an intermediary, Twinlock, Inc., a California corporation wholly owned by the Delaware corporation. The manufacturing operations of this device were confined to the California plant of Twinlock, Inc., located in Los Angeles while the major managerial and policy decisions were formulated by the Board of Directors of the parent company. The California corporation maintained an eastern office in New York City.

Sometime after the sale was consummated it was learned that the sellers of the patent were not the true owners thereof. The anticipated difficulties from this discovery led the corporations to file a petition on January 19, 1961 in the District Court for the Southern District of New York for reorganization under Chapter XI of the Bankruptcy Law. Defendant Lavorata, a major investor in the corporations, was appointed the managing agent for the debtors in possession.

The New York office of the California corporation was transferred in September of 1961, from its prior quarters to a section in the law offices of the defendant Masterson, at 10 Columbus Circle, New York City. Invoices, billings and related records were maintained in California, while informational copies were forwarded to the New York office. These copies were examined monthly at Masterson's office by the court appointed accountants for the debtors in possession, Leon I. Radin & Co.

At a time not designated in the papers, the corporations were adjudicated bankrupt. Thereafter, on January 9, 1964, Mr. Seymour Kehlmann, a law associate of the Trustee in Bankruptcy, Murray Sylvester and whose law firm Blum, Haimoff, Gersen & Szabad, is the Trustee's attorney, appeared at Masterson's office and indicated that he had a court order directing the turnover of the corporate records. Masterson told Kehlmann that if he had such an order he

---

1. The government does not contend that any of the facts are otherwise. Although it has continually asserted the hearsay objection to the affidavits, its basic position is unrelated to any factual quibble. The government's position, simply stated, is that the manner in which a representative of the trustee in bankruptcy secured possession of the records is not binding on the prosecuting arm of the government. See particularly the last paragraph of p. 7, Government's Affidavit in Opposition to the Motion.

should present it to the attorney for the bankrupts, Mr. Moses Polakoff. Masterson and Kehlmann then left Masterson's office. A few hours later, Kehlmann and a representative of the Referee-designated accountant, Leon I. Radin & Co., returned, entered Masterson's office and removed all of the corporate records. This conduct amounted to a trespass, since it was done without the approval of Lavorata or Masterson, and without a court order. Twelve days after the taking of the records, the Trustee petitioned the Referee in Bankruptcy for a turnover order which was granted on February 3, 1964.[2]

Assuming that Kehlmann was acting on the Trustee's behalf, and accepting as correct the facts surrounding the seizure as herein depicted, the Trustee's action was obviously improper.

Considering the indictment once again, the charge is that the reports prepared by the accountants for the debtors in possession are inaccurate and that the cause of the inaccuracies is directly traceable to the unlawful acts of the defendants in falsifying the corporate records. Does the Trustee's impropriety, bearing in mind that he is an officer of the court, preclude the government from introducing the seized materials into evidence at the trial of the action?[3]

The fourth amendment "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures * * *" does not mention the admission or exclusion of evidence secured in violation of the constitutional guarantee. The common law rule is that the admissibility of evidence is uneffected by the manner in which it is obtained. Wigmore, Evidence, § 2183, (McNaughten Ed.). However, the Supreme Court in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) held that the implicit mandate of the fourth amendment requires that evidence illegally obtained by federal agents be suppressed in federal prosecutions. Such exclusions are unrelated to considerations of the reliability of the evidence. The objective is to discourage police misconduct. See, e. g. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). The defendants in the case at bar insist that all governmental misconduct in this regard, and not merely the transgressions of the police, must be discouraged via the suppression of evidence. Thus it is argued that the actions of the Trustee, who is an official of the United States

2. There is no dispute as to the Trustee's ultimate right to the records of the corporate bankrupt. On January 3, 1964, six days prior to the seizure, Masterson, representing Lavorata, who was confined because of illness, indicated his desire for an expeditious turnover of the records. The order was not granted due to the absence of an appropriate corporate official before the Referee at that time. After the seizure, Polakoff, on behalf of Masterson, made what proved to be an abortive suggestion to the Trustee that the seized items be returned, an inventory taken by Masterson, followed by a final turnover of the records to the Trustee.

3. This question presupposes the existence of "standing" on the part of the defendants to object to the manner in which the records were obtained. Since the items were seized from Masterson's prem-

ises, at a time when Lavorata had access and control of the records, the defendants are persons "aggrieved" by the search. This is true notwithstanding the facts that the records were corporate property and their seizure was an incidental result, rather than the primary purpose, of the search. See, Jones v. United States, 362 U.S. 257, 267, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960); Weeks v. United States, 232 U.S. 383, 393, 34 S.Ct. 341, 58 L.Ed. 652 (1914); United States v. Birrell, 242 F.Supp. 191 (S.D.N.Y. 1965); United States v. Pisano, 191 F. Supp. 861 (S.D.N.Y.1961); United States v. Antonelli Fireworks Co., 53 F.Supp. 870, 873 (W.D.N.Y.1943), aff'd 155 F. 2d 631 (2d Cir. 1946) (" * * * [t]he lawful possession by Antonelli of documents and property, either his own or the corporation's, was entitled to protection against unreasonable search and seizure.")

District Court, should bind the prosecuting branch of the government.

It is certainly true that the scope of the exclusionary rule first formulated in *Weeks* has expanded considerably since 1914. In 1949, in Wolfe v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, the court held that the fourth amendment guarantee was applicable to the states through the due process clause of the fourteenth amendment. However, the *Wolf* court added that the states need not exclude illegally seized evidence as long as other sanctions were imposed to discourage police misconduct. Prior to series of cases culminating in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), state police were considered as private parties relative to federal prosecutions, thereby permitting state officers to turn over on a "silver platter" improperly obtained evidence to federal officers for use in federal courts. See Sobel, The Law of Search and Seizure, pp. 7–8, Kings County Criminal Bar Ass'n. This divergence between state and federal practice was remedied by the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Evidence obtained by an illegal search and seizure is now equally unavailable to a prosecutor in state and federal courts.

■ However, although the scope of the rule has expanded, its purpose remains unchanged, viz. the discouragement of misconduct by enforcement officials. Therefore, evidence illegally secured by a private party, in which the government did not directly or indirectly participate, is not suppressable. See e. g. United States v. Goldberg, 330 F.2d 30 (3rd Cir.), cert. denied, 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964); Burdeau v. McDowell, supra. This result necessarily follows from the government's inability to affect the conduct of private parties unconcerned with the prosecution. In the present case the Trustee, while deriving his power from the District Court, serves for the benefit of the creditors. His situation is not unlike that of an attorney who, while an officer of the court, certainly cannot bind the federal government by any errant conduct on his part.

The defendants do not contend that precedent requires that the evidence in this particular case be suppressed. Indeed, the movants state on page 13 of their memorandum in support of the motion that " * * * this Court is now being called upon, in this very *first instance,* to strike down an affront to its judicial authority and dignity. * * " [4] Emphasis added.

4. On page 3 of the defendant's memorandum, United States v. Birrell, supra, is correctly cited for the proposition that the present defendants have "standing" to assert the claimed invalidity of the search. On the first page of his affidavit accompanying the moving papers, the defendants' attorney suggests a further relevance of that decision to the instant case, by stating, "the relief requested herein was recently granted in a somewhat similarly-situated case * * * [United States] v. Birrell." No designation of the parallelisms existing between the two cases is offered and a perusal of Judge Wyatt's learned opinion in *Birrell* discloses that the cases are substantially dissimilar. In *Birrell,* a marshall obtained custody of the defendant's records pursuant to a search warrant. Simultaneously with service of the warrant, two other individuals served Birrell's agent, Dunn, with an impounding order issued by a California District Court of Bankruptcy and a subpoena duces tecum issued by the Bankruptcy Court of the Southern District of New York. The search warrant was found not to be predicated on probable cause, the impounding order was jurisdictionally defective, and the government's argument that the marshall's custody was valid under the subpoena, was rejected since that order merely directed Dunn to bring the records with him and testify. The subpoena did not command a delivery of Birrell's records into the Bankruptcy Court. Unlike the instant case, where the Trustee has custody, the marshall improperly obtained that possession, the fruits of the search were suppressed. *Birrell* clearly has no bearing on the present case, except as to the question of "standing".

This court finds that the acts of the Trustee, in this particular factual context, are not within the exclusionary mandate of the fourth amendment and the motion to suppress is therefore denied.

So ordered.