Harrison H. BROWN et al.

v.

Jerome K. POST, Clerk of the Sixth Judicial District Court of Louisiana, et al.

UNITED STATES of America

v.

Jerome K. POST, Clerk of the Sixth Judicial District Court of Louisiana, et al.
(Consolidated Cases)

Civ. A. Nos. 12471, 12583.

United States District Court
W. D. Louisiana,
Monroe Division.

Jan. 4, 1968.

No. 12471:

Richard B. Sobol, Gladys Kessler, Robert F. Collins, New Orleans, La., Alvin J. Bronstein, Jackson, Miss., for plaintiffs.

Jack P. F. Gremillion, Atty. Gen. of State of Louisiana, Thomas W. McFerrin, Asst. Atty. Gen., Baton Rouge, La., Robert U. Goodman, Asst. Atty. Gen., Shreveport, La., Thompson L. Clarke, Dist. Atty., Sixth Judicial District, St. Joseph, La., for defendants.

No. 12583:

Ramsey Clark, Atty. Gen. of United States, John Doar, Asst. Atty. Gen., James P. Turner, Attorney, Department of Justice, Washington, D. C., Edward L. Shaheen, U. S. Atty., Shreveport, La., for plaintiffs.

Jack P. F. Gremillion, Atty. Gen. of State of Louisiana, Thomas W. McFerrin, William P. Schuler, Asst. Attys. Gen., Baton Rouge, La., Thompson L. Clarke, Dist. Atty., Sixth Judicial District, St. Joseph, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

### RULING ON THE MERITS

Plaintiffs instituted this action pursuant to 42 U.S.C. § 1971 et seq. (Voting Rights Act) to have the general election in Ward 4, Madison Parish, Louisiana, held on November 8, 1966, declared null and void insofar as the office of school board member in that ward is concerned.

In general, the complaint alleges that defendant Post and his deputies, acting in their official capacities as Clerks of Court of Madison Parish, Louisiana, engaged in practices and procedures during the contested general election which discriminated against the Negro voting population of Madison Parish, Ward 4, and resulted in the defeat of the Negro candidate, Harrison H. Brown, who earlier had won the Democratic Party nomination.

Our jurisdiction rests upon 42 U.S.C. §§ 1971(d) and 1973j(f).[1]

### FINDINGS OF FACT

1. Defendant, Jerome K. Post, Jr., is Clerk of the Sixth Judicial District Court of Louisiana. His duties as Clerk include the administration of absentee voting in Madison Parish, Louisiana.

2. Grace Grimes and Jewell Willhite, also named defendants, are deputy clerks of Court and as such are under the direct supervision of Post in carrying out the duties and functions of that office.

3. On August 12, 1966, the Attorney General of the United States certified, pursuant to Section 6 of the Voting Rights Act of 1965 (42 U.S.C. § 1973d), that the appointment of federal examiners in Madison Parish was necessary to enforce the guarantees of the Fifteenth Amendment to the United States Constitution.

4. On August 13, 1966, a primary election for Democratic Party candidates for federal, state and local offices was held in Madison Parish. Harrison Brown, a Negro and one of the plaintiffs herein, won the Democratic nomination for the office of Ward 4 school

---

1. 42 U.S.C. § 1971(d). The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this section and shall exercise the same without regard to whether the party aggrieved shall have exhausted any administrative or other remedies that may be provided by law.
42 U.S.C. § 1973j(f). This provision is substantially identical to 42 U.S.C. § 1971(d).

board member. He defeated the white incumbent, Mrs. Dorothy Provine, who is still holding that position pending the outcome of this litigation. There is no dispute concerning the primary election.

5. In the August primary election there were 2,486 Negroes and 2,101 white voters registered to vote in Ward 4. Brown received 1,682 votes and Provine received 1,592 votes.

6. The general election which forms the crux of this lawsuit was to be held November 8, 1966.

7. On October 4, 1966, J. T. Fulton, a white resident of Madison Parish, Ward 4, properly qualified as a write-in candidate for the school board office now in dispute.

8. In the November general election the official tabulation for the Ward 4 school board office showed 1,891 voted for J. T. Fulton, and 1,622 voted for Harrison Brown. The accuracy of these figures is not an issue in this case.

9. In that election Fulton received 510 absentee votes and Brown received 2 absentee votes. All absentee ballots were cast by white voters.

10 During the period in which qualified electors could apply to vote by absentee ballot in the general election, plaintiffs allege that defendants Post, Grimes and Willhite engaged in practices and procedures which had the legal effect of depriving qualified Negro voters of their right to vote without distinction as to race or color. Specifically, these *alleged* practices include:

(a) Defendants assisted in solicitation of votes in the election by preparing and mailing sample ballots to absent white voters showing such voters how to cast effective absentee write-in votes.

(b) Defendants offered opportunities to white voters to vote by absentee ballot without extending these same opportunities to qualified Negro voters by:

(1) Soliciting and procuring absentee votes from white persons in the Delta Haven Nursing Home when these persons had not requested an absentee ballot in compliance with the Louisiana law concerning absentee voting. No similar opportunity was afforded patients in a nearby Negro nursing home in Tallulah, Louisiana;

(2) Procuring absentee votes from white persons in their residences knowing that these persons would not be absent on the day of the election, and without these persons requesting an absentee ballot as required by Louisiana absentee voting laws;

(3) Allowing employees of Scott Plantation and persons located in the "Willow Bayou" section of the Parish to vote absentee in violation of applicable Louisiana law.

(c) Generally speaking, the complaint alleges that defendants assisted in procuring absentee votes from white persons who had not applied to vote by absentee ballot as required by Louisiana law.

11. We find that:

(a) During the period for absentee voting in the November 8, 1966, general election, not one Negro made an attempt to cast an absentee ballot.

(b) Negroes had voted absentee in previons elections, and were not refused such a right in the subject election.

(c) The Negro voting population of Ward 4, Madison Parish, was a well-organized, politically knowledgeable group, ably represented by the officers and steering committee of the Madison Parish Voters League which was solely comprised of Negroes. The main purpose of this organization was to inform the Negro voting population of elections and to promote the candidacy of Negroes in general.

(d) In order to avoid confusion among the voting members, the Madison Parish Voters League, as campaign strategy, although they knew of Fulton's write-in candidacy some two weeks prior to the general election, deliberately suppressed the fact that J. T. Fulton was a write-in candidate.

12. Contrary to the allegations of the complaint:

(a) There is no evidence whatsoever that defendant Post or his deputies obtained absentee ballots from the Secretary of State for white persons alone, or that the ballots were obtained to facilitate any particular class of voters. The unusual amount of interest in this election was well known to defendants and therefore they obtained extra ballots commensurate with this unusual interest.

(b) The names of all persons voting absentee in the subject election were posted in a conspicuous place in the Clerk's office as provided by law.

(c) No conspiracy by defendants to deprive Negroes of their right to vote has been shown even in the slightest respect.

(d) There is no affirmative proof that it was the color of any candidate or any prospective voter which caused defendants to accept any allegedly illegal absentee votes. There is no basis or justification for the allegation that defendants accepted irregular absentee ballots from white voters merely because they were white and would therefore vote for J. T. Fulton because he was the white candidate.

(e) None of the defendants actively campaigned for J. T. Fulton.

13. Defendants at all times acted in good faith attempting to comply with Louisiana absentee voting laws.

14. The result of the election would not have been different had the final tabulation not included absentee ballots cast outside the office of the Clerk in violation of Louisiana law.

15. Notwithstanding our findings that defendants acted entirely in good faith, they, in their official capacity as Clerks of Court, in fact did discriminate against the Negro voting population in the November 8 general election in the following particulars:

(a) Allowing inpatients of the Delta Haven Nursing Home to vote absentee without extending the same opportunity to inpatients of a Negro nursing home; [2]

(b) Allowing white individuals to vote absentee by making absentee ballots available to them in their private residences without extending this same opportunity to Negro residents; [3]

(c) Making absentee ballots available to the white employees of the Scott Plantation without doing so for Negro employees similarly situated; [4]

(d) Making absentee voting available to white residents of the Willow Bayou section without a corresponding opportunity being given to Negroes similarly situated.[5]

16. Reiterating for emphasis, we do not find defendants engaged in any *intentional* plan to deprive Negroes of their constitutional right to vote. However, the manner in which they administered the absentee process was discriminatory in fact.

## CONCLUSIONS OF LAW

1. Our jurisdiction of this action rests upon 42 U.S.C. §§ 1971(d) and 1973j(f).

2. The Voting Rights Act of 1965 prohibits the imposition of any practice

---

2. In this connection we note the uncontroverted testimony of Deputy Clerk Jewell Willhite (Tr. 75) that she helped fill in the ballots and also told the voters that J. T. Fulton was a write-in candidate and that he was white. In addition Mrs. Willhite testified that no similar opportunity was afforded the inpatients in a Negro nursing home in Tallulah. (Tr. 80.)

3. The particular instances of voting by individuals in their respective homes are contained in the testimony of Defendant Post, Tr. pp. 377–430.

4. Defendant Post testified that he went to the Scott Plantation upon request of Mrs. Patrick who was the wife of the owner of the plantation, Tr. p. 381.

5. Six "substations" were set up in the Willow Bayou section (Tr. p. 407), most of them in private homes.

or procedure which has the effect of denying or abridging the right of any citizen of the United States to vote on account of race or color. (42 U.S.C. § 1973.)

3. 42 U.S.C. § 1971(a) forbids any distinctions in the voting process, including the casting of a ballot, based upon race or color.

4. Defendant Jerome K. Post, Jr., as Clerk of the District Court, and defendants Grace Grimes and Jewell Willhite as Deputy Clerks of Court, had a duty under the Fifteenth Amendment to the United States Constitution and under the Voting Rights Act of 1965 not to engage in any acts or practices in the absentee voting process which have the effect of discrimination among qualified voters in elections of any kind. This duty included refraining from any conduct which results in allowing white voters opportunities to vote without affording the same opportunities to Negro voters.

5. In administering the voting process, defendants, as Clerks of Court, were acting under color of state law.

6. Notwithstanding the good faith of defendants, the acts and practices of defendants set forth in Finding of Fact No. 15 constitutes an unlawful deprivation of the right of qualified Negro voters to vote regardless of race or color as provided by the Fifteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1971, 1973 (Voting Rights Act).

7. The fact that the outcome of the election would not have been changed had the disputed absentee ballots been excluded does not preclude the setting aside of the election (Bell v. Southwell, 376 F.2d 659 (5th Cir. 1967)).

8. Failure of defendants to comply in every detail with the Louisiana absentee voting laws does not serve to void the ballot of otherwise qualified voters, and this opinion expressly so holds. However, if there is discrimination in fact in the administration of the voting process, this will be adequate legal ground to void the election regardless of the good faith intentions of the election officials.

9. The recent amendments to the Louisiana absentee voting laws which took effect September 26, 1967, have no application to this case. However, we express no opinion as to what effect they may have on any elections in the future.

## ORDER AND DECREE

Pursuant to the Findings of Fact and Conclusions of Law entered this date it is ordered, adjudged and decreed that:

1. The general election of November 8, 1966, is null and void insofar as the office of school board member, Ward 4, Madison Parish is concerned.

2. Defendants Jerome K. Post, Jr., Clerk of the Sixth Judicial District Court of Louisiana; Grace Grimes, Chief Deputy Clerk of the Sixth Judicial District Court of Louisiana; and Jewell Willhite, Deputy Clerk of the Sixth Judicial District Court of Louisiana, together with their agents, officers, and successors, shall administer the voting process in compliance with the applicable Louisiana and Federal law in such a manner that will afford equal opportunities to vote to all qualified voters regardless of race or color.

3. Defendants are specifically enjoined from engaging in the practices which were found to be discriminatory in the general election and any other practices and procedures which may be discriminatory in fact.

It is further ordered, adjudged, and decreed that the President and members of the Madison Parish Board of Supervisors of Elections and any other persons who are required by law to act, shall within ninety days from the date of this order call and conduct a special election for the office of Ward 4 School Board Member as prescribed by law between J. T. Fulton, as a write-in candidate, and Harrison H. Brown, as Democratic nominee.

This Court retains jurisdiction of this cause for the purpose of issuing any and

all additional orders herein that may in its judgment become necessary or appropriate for the purpose of modifying and enforcing this decree.

Costs incurred in this proceeding are hereby taxed against defendants.