**UNITED STATES of America,**
Plaintiff,

v.

**Alvin L. COLES, Defendant.**

**Crim. No. 5248.**

United States District Court
D. Maine, N. D.

June 25, 1969.

Lloyd P. LaFountain, U. S. Atty., Edward G. Hudon, Asst. U. S. Atty., Portland, Me., for plaintiff.

Henry N. Berry, III, Portland, Me., for defendant.

**MEMORANDUM OF OPINION AND ORDER OF THE COURT UPON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

GIGNOUX, District Judge.

The defendant has filed with the Court a motion under Fed.R.Crim.P. 41 (e) to suppress for use as evidence by the Government a quantity of approximately one-half pound of marijuana, which he alleges was unlawfully seized from him "by agents of the United States or a person or persons acting under color of authority of the United States" at the Acadia Civilian Conservation or "Job Corps" Center in Acadia National Park, Bar Harbor, Maine on March 24, 1969. The seizure, which occurred during a search conducted by Leroy R. Anderson, the Administrative Officer of the Acadia Center, took place shortly prior to defendant's arrest by

Roy W. Stamey, the Supervising Park Ranger of the Acadia National Park, on a charge of possession of a narcotic drug in violation of 18 U.S.C. § 7 and § 13 (1964) and 22 M.R.S.A. § 2362 (1964). It is undisputed that Anderson was not acting pursuant to an arrest warrant, and it has been stipulated that no search warrant was obtained.

An evidentiary hearing was held before this Court on April 16, 1969, at which defendant, Anderson, two agents of the Center who were present during the search and Stamey testified. From the evidence presented to it, the Court finds the circumstances surrounding the search were as follows.

On the morning of March 24, 1969, defendant, a student or "corpsman" at the Acadia Civilian Conservation Center, was returning to the Center by bus from Boston, somewhat overdue on a leave he had been granted. In response to defendant's telephoned request, Gordon L. Stanley, an Administrative Assistant at the Center, met defendant's bus when it arrived in Ellsworth, Maine at around 9:45 a. m. Defendant had a small suitcase with him, which he placed on the floor in the rear of Stanley's automobile. Stanley and defendant then drove to a garage in Ellsworth where they met Anderson. After several local stops, the three drove to the Acadia Center, Anderson following Stanley and defendant in his own car. Upon their arrival at

around noon, defendant started to walk to the mess hall for lunch, but Stanley told him that Anderson wanted to see him in his office. Defendant removed his suitcase from the automobile and followed Stanley to the door of Anderson's office. Anderson met him there and said, "Come into my office," or words to that effect. Defendant testified that he did not want to enter Anderson's office but did so because he believed that Anderson had the authority to punish or expel corpsmen for misconduct or disobedience. Stanley followed defendant into the office.

To this point, there had been no conversation regarding the suitcase, nor had there been any mention of marijuana. Once inside the office, however, Anderson said to defendant, "I would like to look at the contents of your suitcase," or words to that effect.[1] Defendant testified that he did not want to allow Anderson to inspect its contents but did so, involuntarily, because he felt he had no choice. In any event, defendant remained silent, opened his suitcase, and started to remove the contents.[2] In the course of removing the contents, defendant withdrew a small paper bag from a compartment on the side of the suitcase and placed it on a nearby desk. The bag was sufficiently closed so that its contents were not visible. Anderson asked defendant what was in the bag, and defendant replied that it was his lunch. Defendant then removed the re-

---

1. There is a conflict in the testimony as to the conversation which took place and as to who was present, besides defendant and Anderson, in the latter's office during the search. Defendant testified that Anderson told him he was going to search his suitcase and then proceeded to do so. Anderson, on the other hand, testified that he asked defendant, "Do you mind my checking your baggage," or words to that effect, and defendant replied, "Go ahead." Stanley testified that Anderson said, "I would like to look at the contents of your suitcase," or words to that effect, to which defendant "offered no verbal objection." Defendant also testified that no one else was present when the marijuana was discovered and that Stanley and the Center Medical Techni-

cian, Clyde H. Bodge, were only summoned into the office afterwards. Stanley and Bodge, on the other hand, testified that they were present at the time of the discovery. In the view which this Court takes of the case, these variances are immaterial, but for purposes of discussion, it is accepting Stanley and Bodge's version of who was present and Stanley's version of the conversation.

2. There is also a conflict in the testimony as to who actually opened the suitcase, defendant contending that Anderson opened it and removed its contents and Anderson and Stanley maintaining that defendant did so himself. Again, the Court feels the question is immaterial but will accept the latter version.

maining articles from the suitcase, which included items of clothing and a bottle of cologne. At this juncture, Stanley left the office, and Clyde H. Bodge, the Center Medical Technician, who had been standing outside the door, entered. Anderson then picked up the paper bag, opened it, removed a substance wrapped in newspaper, unwrapped the newspaper and asked defendant to identify the substance. Defendant said that it was tobacco. Anderson said that it did not look like tobacco and asked defendant if he was sure that was what it was. Defendant replied, "It's 'grass'" (marijuana).

Following this disclosure, at around 12:30 p. m., Anderson called Stamey, the Park Ranger, and asked him to come to the Center. Anderson then began to interrogate defendant as to the circumstances relating to his possession of the marijuana. According to Anderson, defendant implicated several other corpsmen as having financed the operation, claimed he had no list of those involved, and volunteered to submit to a search of his person. Shortly after this personal search, which proved fruitless, had been completed, Stamey arrived. Stamey testified that upon his arrival, he spoke briefly in private with Anderson, then introduced himself to defendant and read defendant his rights from a printed card.[3] He inquired whether defendant understood what had been read to him, and defendant replied that he did. Stamey then began to question defendant, but terminated his interrogation when defendant requested a lawyer.

Defendant challenges the search as a violation of the right, secured to him by the Fourth Amendment to the Constitution, to be free from unreasonable searches and seizures. The Government concedes that the search was conducted without a search warrant and, quite properly, does not attempt to support the search as incident to a lawful arrest. But the Government defends the search as legally justified because defendant consented to it. The Court, however, does not find it necessary to pass upon this issue, since it has concluded, upon a broader ground, that the search and seizure was reasonable and did not infringe defendant's Fourth Amendment rights. The Court has no doubt that the search of defendant's suitcase was a constitutional exercise of Anderson's authority, as the Administrative Officer of the Acadia Center, to maintain proper standards of conduct and discipline at the Center.

The Acadia Civilian Conservation Center is one of the Job Corps centers established and operated by the Office of Economic Opportunity pursuant to the provisions of the Economic Opportunity Act of 1964, as amended, 42 U.S.C. § 2701 et seq. (Supp. III 1968). The purpose of the Job Corps program is to provide, in a group setting, intensive programs of education, vocational training and work experience for low income, disadvantaged young men and women in order to assist them to become more responsible and productive citizens. 42 U. S.C. § 2711 (Supp. III 1968). In order to promote proper moral and disciplinary conditions at the centers, standards of conduct and deportment are to be provided, and the individual directors are given full authority to discipline the corpsmen. 42 U.S.C. § 2720 (Supp. III 1968).[4] As the Administrative Officer

---

3. The card was not offered in evidence, but apparently contained the standard warnings prescribed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). It is undisputed that at no time prior thereto had defendant been informed of his constitutional rights and, specifically, of any right to resist the instant search.

4    42 U.S.C. § 2720 provides:
    Standards of conduct; discipline
    (a) Within Job Corps centers, standards of conduct and deportment shall be provided and stringently enforced. In the case of violations committed by enrollees, dismissals from the Corps or transfers to other locations shall be made in every instance where it is de-

of the Acadia Center, Anderson was responsible for conditions at the Center and for adequate supervision of the corpsmen entrusted to his charge. It seems clear that the object of the search of defendant's suitcase was to determine whether contraband was being brought to the Center. Quite plainly, the investigation was conducted solely for the purpose of ensuring proper moral and disciplinary conditions at the Center, an obligation mandated by federal statute.

Although no case precisely in point has been found, the present case is closely analogous to Moore v. Student Affairs Committee of Troy State University, 284 F.Supp. 725 (M.D.Ala.1968), where a search by the Dean of Men and two narcotics agents of a University student's dormitory room was held to be constitutionally permissible as a reasonable exercise of the University's supervisory duty to maintain order and discipline on the campus; United States v. Collins, 349 F.2d 863 (2d Cir. 1965), cert. denied, 383 U.S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303 (1966), in which a search of a Customs Service employee's work area and desk was held to be a constitutional exercise of the power of the Government as the defendant's employer to supervise and investigate the performance of his duties; United States v. Grisby, 335 F.2d 652 (4th Cir. 1964), where a search of a marine corporal's living quarters was upheld as a proper exercise of military authority; and United States v.

Donato, 269 F.Supp. 921 (E.D.Pa.1967), in which a search of a United States Mint employee's locker was sustained as justified in order to maintain the order and security of the Mint. *See also* Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946). As the Court observed in Moore v. Student Affairs Committee of Troy State University, *supra* at 730–731:

> It is settled law that the Fourth Amendment does not prohibit reasonable searches when the search is conducted by a superior charged with a responsibility of maintaining discipline and order or of maintaining security. (footnote omitted).

■ The present result is entirely consistent with the rationale underlying the exclusionary rule first formulated by the Supreme Court in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). In *Weeks* the Supreme Court held that evidence illegally obtained by federal agents is inadmissible in a federal prosecution. The objective of the *Weeks* rule is to force law enforcement officers to observe Fourth Amendment rights. *See, e. g.*, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Although the scope of the rule has expanded considerably since 1914,[5] its purpose remains the same, that

---

termined that retention in the Corps, or in the particular Job Corps center, will jeopardize the enforcement of such standards of conduct and deportment or diminish the opportunity of other enrollees.

(b) In order to promote the proper moral and disciplinary conditions in the Job Corps, the individual directors of Job Corps centers shall be given full authority to take appropriate disciplinary measures against enrollees including, but not limited to, dismissal from the Job Corps, subject to expeditious appeal procedures to higher authority, as provided under regulations set by the Director.

5. By subsequent extension, the Weeks rule has been progressively applied in federal court prosecutions where federal officers participate with state officers in an illegal search and seizure, Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L. Ed. 520 (1927); where state officers conduct an illegal search solely on behalf of the United States, for the intended purpose of a federal prosecution, Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293 (1927); United States v. Butler, 156 F.2d 897 (10th Cir. 1946); where, through a tacit "working arrangement," evidence obtained illegally by state officers, or even by private parties, is handed over to federal authorities, Fow-

is, to discourage police misconduct. Thus, evidence illegally obtained by a private citizen, without any governmental participation, is admissible. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); Watson v. United States, 391 F.2d 927 (5th Cir. 1968); Barnes v. United States, 373 F.2d 517 (5th Cir. 1967); Gold v. United States, 378 F.2d 588 (9th Cir. 1967); United States v. Goldberg, 330 F.2d 30 (3d Cir.), cert. denied, 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964); United States v. Masterson, 251 F.Supp. 937 (S.D.N.Y.), cert. denied, 385 U.S. 833, 87 S.Ct. 72, 17 L.Ed.2d 67 (1966); Gandy v. Watkins, 237 F.Supp. 266 (M.D.Ala.1964), cert. denied, 380 U.S. 946, 85 S.Ct. 1032, 13 L.Ed.2d 965 (1965); United States v. Frank, 225 F.Supp. 573 (D.D.C.1964); United States v. McGuire, 381 F.2d 306, 313 n. 5 (2d Cir. 1967) (dictum), cert. denied, 389 U.S. 1053, 88 S.Ct. 800, 19 L.Ed.2d 848 (1968). Nor has any court extended the rule of the *Weeks* case so far as to hold that the Fourth Amendment requires the exclusion of evidence obtained through a search in which there was no participation or instigation by a federal or state law enforcement officer.[6]

In the present case it is manifest that Anderson, as the Administrative Officer of the Acadia Center, possessed neither the status nor any of the powers of a law enforcement officer. It is neither suggested, nor would the evidence sustain, that his search was conducted at the behest of, or in cooperation with, any law enforcement officer. And it cannot be seriously maintained that the object of the search was to procure evidence of a crime or in any way to facilitate an anticipated federal prosecution. As previously indicated, the investigation was conducted solely for the purpose of preventing the introduction of forbidden articles into the Center. *See* United States v. Crowley, 9 F.2d 927 (N.D.Ga.1922). Under these circumstances it cannot be said that excluding the evidence seized by Anderson would improve standards of federal law enforcement, since Anderson is neither a law enforcement officer nor is he answerable to one. And exclusion in the present case could hardly be expected to affect the conduct of those who, like Anderson, are essentially unconcerned with the success of federal criminal prosecutions. *See* United States v. Masterson, *supra*, 251 F.Supp. at 940.

The Court holds that, in the circumstances of this case, the search of defendant's suitcase was a reasonable exercise of Anderson's supervisory power as the Administrative Officer of the Acadia Center, and therefore did not infringe defendant's Fourth Amendment rights.

The motion to suppress is denied.

It is so ordered.

---

ler v. United States, 62 F.2d 656 (7th Cir. 1932); Lowrey v. United States, 128 F.2d 477 (8th Cir. 1942); Corngold v. United States, 367 F.2d 1 (9th Cir. 1966); and, finally, where, even in the absence of federal participation or a working arrangement, evidence obtained in an unreasonable search by state officers is handed over to federal agents, Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Evidence obtained by an illegal search and seizure is now equally inadmissible in state court prosecutions. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684 (1961).

6. The Weeks rule does not require the exclusion of evidence illegally obtained by foreign police officers, who are not subject to the strictures of the Fourth Amendment. Brulay v. United States, 383 F.2d 345 (9th Cir.), cert. denied, 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967); Robson v. United States, 279 F.Supp. 631 (E.D.Pa.1968), vacated as moot, 404 F.2d 885 (3d Cir. 1968).