## A. B. C., Alleged Delinquent

*E. Robert Elicker, 2nd,* Assistant District Attorney, for Commonwealth.

*Harold S. Irwin, Jr.,* for juvenile.

SHUGHART, P. J., June 23, 1970.—This is a juvenile case and, therefore, a fictitious caption has been employed and the parties involved will not be identified in any way as to indicate the name of the juvenile or the area from which he comes.

At the hearing on the petition filed in the above matter, evidence was introduced that the principal and assistant principal of the high school attended by the juvenile had opened the school locker of the juvenile with a master key and removed therefrom certain material that was later found, upon analysis, to contain a high percentage of marihuana. At the close of the Commonwealth's case, counsel for the juvenile moved to suppress this evidence. A ruling was reserved to afford counsel for the juvenile and the district attorney's office an opportunity to file briefs on the matter. Oral comments have been made

to the court and the filing of written briefs has been waived. The matter is, therefore, ready for decision.

The school officials testified that they had received information from one of the faculty members that the juvenile had marihuana secreted in his locker. Based on this information, the principal and assistant principal opened the locker with the use of a master key and obtained therefrom a bag of material which was on the floor of the locker. Subsequently, the school officials called the local police department and turned over to an officer the material that had been seized. Eventually, the material was delivered to the Pennsylvania State Police Crime Laboratory where it was analyzed. A chemist from the lab appeared and testified that his analysis revealed that the package contained a considerable amount of marihuana but that there was also present in the material some oregano.

It is well established that the Fourth Amendment of the United States Constitution gives protection against unlawful searches and seizures made by sovereign authorities, but does not intend to be a limitation upon searches made by third persons. In Commonwealth v. Tanchyn, 200 Pa. Superior Ct. 148, 152, 154, the court quoted from the case of Burdeau v. McDowell, 256 U. S. 465, as follows:

" '. . . The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the Fourth Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued.

" 'In the present case the record clearly shows that no official of the federal government had anything to do with the wrongful seizure of the petitioner's property, or any knowledge thereof until several months after the property had been taken from him and was in the possession of the Cities Service Company . . .

" 'The papers having come into the possession of the government without a violation of petitioner's rights by governmental authority, we see no reason why the fact that individuals, unconnected with the government, may have wrongfully taken them, should prevent them from being held for use in prosecuting an offense where the documents are of an incriminatory character.' "

The Burdeau case has not been overruled and in the Federal courts the fourth amendment has been held not to require the exclusion of evidence obtained through a search and seizure in which there is no participation nor instigation by a Federal or State law enforcement officer. Thus, evidence illegally obtained by a private citizen without any governmental participation is admissible: Burdeau v. McDowell, supra; Commonwealth v. Tanchyn, supra; Commonwealth ex rel. Young v. Young, 213 Pa. Superior Ct. 515, 520; Stone v. Wingo, 416 F. 2d 857 (1969); National Labor Relations Board v. South Bay Daily Breeze, 415 F. 2d 360, 362 (1969); Duran v. United States, 413 F. 2d 596, 608 (1969); United States v. Coles, 302 F. Supp. 99, 102 (1969).

In this case, the police were in no way involved until after the search had been made by the school authorities and the material found. It is clear, therefore, that the evidence may not be suppressed.

While the Burdeau case, supra, indicates that evidence wrongfully obtained by third persons without any governmental participation may be admitted into

evidence without violation of the fourth amendment, it is important to point out that the seizure here was not improper or unlawful. In the case of People v. Overton, 20 N. Y. 2d 360, 363, 283 N. Y. S. 2d 22, 25, the Court of Appeals of New York, in speaking of the relationship of the school authorities to school lockers, said:

"The students at Mount Vernon are well aware that the school authorities possess the combinations of their lockers. [In the instant situation, the school authorities possessed a master key.] It appears understood that the lock and the combination are provided in order that each student may have exclusive possession of the locker vis-a-vis other students, but the student does not have such exclusivity over the locker as against the school authorities . . .

"Indeed, it is doubtful if a school would be properly discharging its duty of supervision over the students, if it failed to retain control over the lockers. *Not only have the school authorities a right to inspect but this right becomes a duty when suspicion arises that something of an illegal nature may be secreted there.* When Dr. Panitz learned of the detectives' suspicion, he was obligated to inspect the locker. This interest, together with the nonexclusive nature of the locker, empowered him to consent to the search by the officers." (Italics supplied.)

In the case of United States v. Coles, supra, the court held that a search by an administrative officer in a Job Corps Center of a suitcase of a corpsman who had just returned from leave, was a constitutional exercise of the officer's authority to maintain proper standards of conduct and discipline at the center, and marihuana discovered as a result of such search was admissible in the prosecution of the corpsman for possession of narcotic drugs. To the same effect, see United States v. Pryba, 312 F. Supp. 466.

We conclude, therefore, that in the present case the school authorities had the right to search the locker for contraband based on the report received from the teacher. Further, since the seizure was not made by police authority, the material seized was properly admitted into evidence against the juvenile.

## ORDER

And now, June 23, 1970, for the reasons set forth above, the motion to suppress the evidence offered in the above case is overruled.