Gary R. KEENE, Plaintiff,

v.

Edward A. RODGERS, Superintendent,
Maine Maritime Academy.

and

John A. Platz, Edward R. Stanley, Rudolph O. Marcoux, Whitney L. Wheeler, James A. Bishop, William Jabine, Richard S. Libby, Roderick B. Littlefield, Theodore Truman, Roger L. Willey, J. Hollis Wyman, and David M. Cox, Defendants.

Civ. No. 1826.

United States District Court,
D. Maine, N. D.

Aug. 5, 1970.

Norman Minsky, and Jules L. Mogul, Bangor, Me., Wayne P. Libhart, Brewer, Me., for plaintiff.

Roger A. Putnam, and Michael T. Healy, Portland, Me., for defendants.

### MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is an action under the Civil Rights Act, 42 U.S.C. § 1983, arising out of the alleged wrongful dismissal of plaintiff as a student at the Maine Maritime Academy, in deprivation of his rights to procedural due process under the Fourth and Fourteenth Amendments to the United States Constitution. Defendants are the Superintendent and members of the Board of Trustees of the Academy. Plaintiff seeks a declaratory judgment that his dismissal was improper and an injunction directing that he be reinstated as a student in good standing. Plaintiff asserts that his dismissal was unlawful in that he was denied due process of law for a multitude of reasons, only two of which require any discussion. These are, first, that the evidence upon which his dismissal was predicated, a quantity of marihuana and a can of beer, was the product of an illegal search and seizure, and should, therefore, have been excluded in the proceedings which resulted in his expulsion; and, second, that the Board of Trustees which heard his case was not an impartial tribunal. For the reasons which follow, the Court has concluded that there is no merit in either claim.

## I

The facts may be briefly summarized as follows: On March 17, 1970, plaintiff Gary R. Keene was a midshipman in good standing in the fourth year (senior) class at the Maine Maritime Academy, a state and federally supported quasi-military maritime academy located at Castine, Maine. Less than two weeks of classes remained before his final examinations, after which he would graduate. On that evening, Chief Warrant Officer Darkis, the Administrative Assistant to the Commandant of Midshipmen at the Academy, observed a Volkswagen camper bus in the Academy parking lot with two large American flags and several smaller flags draped over its windows. Darkis ascertained that the Volkswagen belonged to Keene and informed the Assistant Commandant of Midshipmen, Commander Giamotti, of his observation. Giamotti told Darkis to request the Academy Duty Officer, Lt. Biggie, to investigate. After verifying Darkis' report, Biggie summoned Keene to his office and "suggested" that he remove the flags.

The following morning Biggie again checked the Volkswagen and found that while the two large flags had been removed, the smaller flags had not. Biggie reported this to Giamotti, who in turn reported the incident to the Commandant of Midshipmen, Captain Brennan. Suspecting that a desecration of the American flag had occurred and also that one of the flags might be a missing flag belonging to the Academy, Brennan instructed Giamotti and Chief Warrant Officer Buss, the Academy Security Officer, to check the Volkswagen and gave Buss permission to make a search. Buss thereupon told Keene that he wanted to inspect his car. Keene obtained the car keys from his room and met Buss and Giamotti at the parking lot.

In the parking lot, Buss, in Giamotti's presence, asked Keene to unlock the doors to the Volkswagen, and Keene did so without protest. Upon opening the door, Buss observed within the car a can of beer and a number of frayed American flags. Noting a peculiar odor, he continued his search of the vehicle, and eventually opened a small metal card file, in which, underneath a stack of note cards, he found a plastic bag containing a substance later identified as marihuana.

Possession of alcohol and/or narcotics are listed as Class I offenses in the Rules and Regulations of the Academy. A Class I offense is punishable with from 50 demerits to dismissal. Desecration of the flag is not a specifically listed offense, but is deemed to be "conduct unbecoming a midshipman and gentleman," which may also be punished as a Class I offense.

As a result of these events, Keene was suspended from the Academy on March 18, and on March 24 the Superintendent of the Academy, defendant Rodgers, held a "Superintendent's Mast" and dismissed Keene. Rodgers advised Keene and his counsel, who represented Keene at the Superintendent's Mast, of Keene's right to appeal his dismissal to the Board of Trustees. Two days later, on Thursday, March 26, Keene's counsel filed the present action in this Court. A hearing on plaintiff's request for a temporary restraining order was held the same day, but was continued by agreement of the parties until Saturday, March 28. On the same day, the Trustees retained counsel, and at the regular monthly meeting of the Board on the following day, the Trustees, acting on the advice of counsel, set aside Keene's dismissal by Rodgers and voted to suspend him pending a full *de novo* hearing before the Board. At the same meeting the Board also adopted an elaborate resolution, prepared by its counsel, setting forth the procedures to be followed at the hearing: (a) Keene could be represented by counsel of his choice, and Keene and his counsel could cross-examine any witnesses presented before the Board in support of the charges; (b) in advance of the hearing Keene or his counsel could receive a list of the prospective witnesses against him and copies of any statements they had made;

(c) a stenographic record of the proceedings before the Board would be made and transcribed; (d) Keene could present any evidence he or his counsel might deem proper in defense of the charges; (e) at the close of the hearing, Keene or his counsel could file memoranda or briefs; (f) the Board would make written findings of fact and conclusions thereon.

Keene's counsel requested a hearing before the Trustees at the earliest possible date. On Friday evening, March 27, it was agreed that the hearing would be held on Monday, March 30, and that in the meantime the Court hearing scheduled for Saturday, March 28, could stand continued.

There is no dispute that the conduct of the hearing before the Board of Trustees, which was held as agreed on Monday, March ·30, conformed to the rules which had been adopted by the Trustees the previous Friday. Keene was charged with possession of narcotics on Academy property, possession of beer on Academy property and desecration of the American flag. The evidence developed by the Academy witnesses at the hearing consisted of the facts which have been recited above. Keene presented no defense, other than testimony as to his good prior record at the Academy. At the conclusion of the hearing, Keene's counsel waived any post-hearing memorandum or brief and requested immediate findings prior to the preparation of the written record. The Trustees then filed detailed written findings and conclusions. They found that Keene was in fact guilty of the charges against him [1] and voted unanimously to dismiss him from the Academy.

## II

Plaintiff's first contention is that the search of his Volkswagen bus was in violation of his Fourth Amendment right to be free of unreasonable searches and seizures, and that any evidence of the contents of the bus produced by that search was therefore inadmissible at the disciplinary hearing under the exclusionary rule established in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Defendants contend that the evidence was legally admissible and properly considered by the Trustees on several grounds: First, defendants say that plaintiff consented to the search; second, they argue that in any event the rule of *Weeks* and *Mapp* does not apply to college disciplinary proceedings; and third, defendants urge that the search of plaintiff's vehicle was a reasonable search not prohibited by the Fourth Amendment. The Court does not find it necessary to pass upon either of the first two issues thus presented, since it is satisfied that even if plaintiff did not consent to the search, and even if the exclusionary rule is applicable to academic disciplinary proceedings, the search in this case did not violate the Fourth Amendment.

The Maine Maritime Academy is a quasi-military maritime academy maintained by the State of Maine,[2] in part financed by federal funds, and operated in conformity with standards prescribed by the federal government.[3] The mission of the Academy is to train officers for the United States Merchant Marine and for the United States Navy or Coast Guard in time of war, and on gradua-

---

1. No specific finding of flag desecration was made. The Trustees instead found that Keene by his "disrespectful and improper" treatment of the National Ensign, was guilty of "conduct unbecoming a midshipman and gentleman."

2. *See* An Act Creating the Maine Nautical School, Priv. and Spec. L. of Me., ch. 37 (1941); as amended by An Act Amending the Law Relative to the Maine Nau-

tical School to Provide for War Emergency, Priv. and Spec. L. of Me., ch. 102 (Special Sess.1942) (name changed to Maine Maritime Academy); An Act Declaring Maine Maritime Academy as a State Agency, Priv. and Spec. L. of Me., ch. 24 (1947). *See* Rodway v. Wiswall, 267 A.2d 374 (Me. June 29, 1970).

3. *See* 46 U.S.C. § 1381 et seq.; 46 C.F.R. §§ 310.1–310.12.

tion; a cadet may receive a commission in the United States Navy or Coast Guard Reserve. Maine Maritime Academy Catalog 1970, p. 3; Maine Maritime Academy Rules and Regulations, II. The Academy Catalog and Rules and Regulations stress the military character of the institution and the importance of high standards of conduct and discipline to the discharge of its responsibility to train future officers of the Merchant Marine, Navy and Coast Guard. *Cf.* Wasson v. Trowbridge, 382 F.2d 807, 809 (2d Cir. 1967).

Chief Warrant Officer Buss is employed by the Academy as its security officer charged with the responsibility of protecting Academy property and enforcing the Academy's Rules and Regulations. He is not a federal or state law enforcement officer. His search of plaintiff's vehicle in this case was conducted under the instructions of the Commandant of Midshipmen, Captain Brennan, who is responsible for the conduct and discipline of the cadets. The object of the search was to determine whether plaintiff had desecrated the American flag and had possibly stolen Academy property, both serious breaches of the Academy's disciplinary rules. Quite plainly, the search was conducted solely for the purpose of enforcing the Academy Rules and Regulations and of insuring proper conduct and discipline on the part of a cadet.

The present case falls squarely within the rule set forth by this Court a year ago in United States v. Coles, 302 F.Supp. 99 (D.Me.1969), where a search by the Administrative Officer of a federal Job Corps Center of a corpsman's suitcase was held to be constitutionally permissible as a reasonable exercise of the Administrative Officer's supervisory authority to maintain proper standards of conduct and discipline at the Center. In that case, the search had produced marihuana, and this Court held the marihuana was admissible in a subsequent criminal proceeding. The Court said (quoting Moore v. Student Affairs Committee of Troy State University; 284 F.Supp. 725, 730–731 (M.D.Ala.1968)):

> It is settled law that the Fourth Amendment does not prohibit reasonable searches when the search is conducted by a superior charged with a responsibility of maintaining discipline and order or of maintaining security (citations omitted). 302 F. Supp. at 102.

The Court further observed that the result reached was "entirely consistent with the rationale underlying the exclusionary rule first formulated by the Supreme Court in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914)," the objective of which is "to force law enforcement officers to observe Fourth Amendment rights * * * that is, to discourage police misconduct." 302 F.Supp. at 102–103. *See* Terry v. Ohio, 392 U.S. 1, 12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Linkletter v. Walker, 381 U.S. 618, 636–637, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Mapp v. Ohio, *supra*, 367 U.S. at 655, 81 S.Ct. 1684. The Court also pointed out that no court has yet extended the rule of *Weeks* to exclude evidence obtained by a search in which there was no participation or instigation by a federal or state law enforcement officer. 302 F.Supp. at 103.

In the present case, as in *Coles*, Buss had neither the status nor the powers of a law enforcement officer, and it is not suggested that his search was conducted in cooperation with any law enforcement officer or in anticipation of any federal or state criminal prosecution. As previously indicated, the search was conducted solely for the purpose of determining whether there had been a breach of an Academy disciplinary rule or regulation.

The Court holds that, in the circumstances of this case, the search of plaintiff's automobile was a reasonable exercise of the Academy's supervisory authority to maintain order and discipline among the cadets, and therefore did not infringe plaintiff's Fourth Amendment rights.

## III

The plaintiff's second contention is that he was denied procedural due process at the disciplinary hearing, primarily because the Board of Trustees which heard his case was not an impartial tribunal.

The requirements of due process in student disciplinary proceedings have been fully discussed by several courts, e. g., Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961); Moore v. Student Affairs Committee of Troy State University, *supra*, 284 F. Supp. at 731; Esteban v. Central Missouri State College, 277 F.Supp. 649 (W. D.Mo.1967); General Order on Judicial Standards of Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Education, 45 F.R.D. 133, 144–148 (W. D.Mo.1968), and by several commentators, e. g., Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027, 1059–1082 (1969); Note, Developments in the Law—Academic Freedom, 81 Harv.L.Rev. 1045 (1968); Van Alstyne, The Student as a University Resident, 45 Denver L.J. 582 (1968); Van Alstyne, Procedural Due Process and State University Students, 10 U.C.L.A.L.Rev. 368 (1963). The minimum requirements of due process in an academic setting have been summarized by Professor Wright as fourfold: (1) the student must be advised of the charges against him; (2) he must be informed of the nature of the evidence against him; (3) he must be given an opportunity to be heard in his own defense; and (4) he must not be punished except on the basis of substantial evidence. Wright, The Constitution on the Campus, *supra*, 22 Vand.L.Rev. at 1071–1072. Additionally, there appears to be substantial agreement that due process requires that (5) the student must be permitted the as-

sistance of a lawyer, at least in major disciplinary proceedings, Esteban v. Central Missouri State College, *supra*, 277 F.Supp. at 651; Moore v. Student Affairs Committee of Troy State University, *supra*, 284 F.Supp. at 731; but see Wasson v. Trowbridge, *supra*, 382 F.2d at 812 (student not entitled to a lawyer so long as "the government does not proceed through counsel"); General Order on Judicial Standards, *supra*, 45 F.R.D. at 147–148 (no "general requirement" of counsel); (6) the student must be permitted to confront and to cross-examine the witnesses against him, e. g., Jones v. State Board of Education, 279 F.Supp. 190, 197 (M.D.Tenn.1968), aff'd, 407 F.2d 834 (6th Cir. 1969), cert. dismissed, 397 U.S. 31, 90 S.Ct. 779, 25 L. Ed.2d 27, reh. denied, 397 U.S. 1018, 90 S.Ct. 1230, 25 L.Ed.2d 432 (1970); Esteban v. Central Missouri State College, *supra*, 277 F.Supp. at 652; but see Dixon v. Alabama State Board of Education, *supra*, 294 F.2d at 159; General Order on Judicial Standards, *supra*, 45 F.R.D. at 147–148; and (7) the student has the right to an impartial tribunal, which shall make written findings, Wasson v. Trowbridge, *supra*, 382 F.2d at 813; Esteban v. Central Missouri State College, *supra*, 277 F.Supp. at 651–652. See generally, Wright, The Constitution on the Campus, *supra*, 22 Vand.L.Rev. at 1074–1082.

In this case, it is manifest that the Trustees afforded plaintiff all of these safeguards. At plaintiff's own request, the hearing was held at the earliest possible moment. Prior to the hearing, he was furnished with written charges and with a list of the Academy's witnesses and copies of their statements. He was permitted counsel of his own choosing and was allowed to confront and to cross-examine all witnesses and to present evidence in his defense.[4] The

4. Plaintiff's contention that he was fatally impaired in his defense—he failed to take the witness stand—by the fact that criminal proceedings were then pending against him is without merit. It is clear that the Academy was not required to postpone its disciplinary proceeding until the criminal charge had been disposed of. Grossner v. Trustees of Columbia University in the City of New York, 287 F.Supp. 535, 550–551 (S.D.N.Y.1968); Furutani v. Ewigleben, 297 F.Supp. 1163 (N.D.Cal.

evidence produced at the hearing was overwhelming in substantiating his guilt. Written findings were filed. As for plaintiff's claim that the Trustees, despite the procedural safeguards they had adopted for his benefit, should have disqualified themselves as the deciding tribunal, plaintiff's counsel was allowed to conduct extensive *voir dire* of each individual Trustee present in order to determine whether any member of the panel had had such prior involvement with his case that he might not be impartial. *Cf.* Wasson v. Trowbridge, *supra*, 382 F.2d at 813. This *voir dire* revealed only the most superficial knowledge on the part of any member of the Board concerning the background of the case, and each trustee stated that he could and would judge the case fairly and solely on the evidence presented at the hearing. Certainly, plaintiff was not entitled to an automatic disqualification of the entire Board, which was the only panel authorized to act on the charges.[5] The impracticality of such a suggestion in an academic context is manifest. *See* Wright, The Constitution on the Campus, *supra*, 22 Vand.L.Rev. at 1080–1081. Furthermore, the evidence of plaintiff's guilt was uncontradicted and was so conclusive that plaintiff can hardly claim he was prejudiced by the composition of the panel. *Cf.* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

From its review of the entire record in this case, the Court is satisfied that plaintiff has had a hearing which meets the tests of "fairness and reasonableness" in an academic setting. The Constitution requires no more. Wright, The Constitution on the Campus, *supra*, 22 Vand.L.Rev. at 1082.

### IV

The Court holds that none of plaintiff's constitutional rights were infringed by the Trustees' action in dismissing him.

Judgment will be entered dismissing the action, with costs.

It is so ordered.

---

1969) ; Goldberg v. Regents of the University of California, 248 Cal.App.2d 867, 885, 57 Cal.Rptr. 463, 476 (1967) ; Wright, The Constitution on the Campus, *supra*, 22 Vand.L.Rev. at 1077–1078. *Cf.*

DeVita v. Sills, 422 F.2d 1172, 1178–1180 (3rd Cir. 1970).

5. *See* Priv. and Spec. L. of Me., ch. 37 § 2 (1941), *supra*.