BEVERLY MELEN, b. n. f. v. ELIZABETH McLAUGHLIN.

November Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed January 2, 1935.

*James P. Leamy* and *Christopher A. Webber* for the defendant.

*Novak & Bloomer* for the plaintiff.

THOMPSON, J. This is an action of tort for an assault and battery. There was a trial by jury and a verdict and judgment for the plaintiff. The defendant excepted.

■ The verdict was for $450. The defendant seasonably moved to set it aside. The motion was overruled and an exception was saved. Two grounds of the motion are briefed: (1) That the verdict was contrary to the evidence and the weight of the evidence; (2) that the verdict was excessive. Upon each of these grounds the motion was directed to the discretion of the trial court, and its ruling is not to be revised unless it is made to appear that the court failed or refused to exercise its discretion or abused it. *Rule* v. *Johnson,* 104 Vt. 486, 490, 162 Atl. 383, and cases cited.

The plaintiff, a girl eleven years old, was a pupil in the fourth grade in a school in Pittsford. The defendant was her teacher. While there is some conflict in the evidence, the jury could have found the following facts: On Wednesday, May 17, 1933, the defendant sent the plaintiff to the blackboard to do an example in arithmetic. She did not "get it right two or three times," and the defendant shook her which caused her to drop the eraser. As she bent over to pick up the eraser the defendant struck her a severe blow on her left side in the region of the left kidney with the corner or edge of an arithmetic book. The blow hurt the plaintiff and she went to her seat and cried until recess, which was a few minutes later. She went out of doors at recess but she could not stand up straight because of the blow she had received. Some of the other girls helped her out of the schoolroom and on to a teeter board in the playground where she lay on her side. One of the girls teetered her slowly up and down during the recess. She did not return to the schoolroom when recess was over but remained lying on the teeter board as it hurt her to move and she could not get up alone. Another teacher helped her into the cloak room and left her there. She attempted to go into the schoolroom but fell on the floor and could not get up. She remained on the floor until after the fourth-grade pupils left the schoolroom. Soon after

■

they left the defendant went into the cloak room. The plaintiff tried to get up and the defendant tried to make her straighten up but the pain was such that she could not straighten up. About that time the plaintiff's mother appeared. She set the plaintiff in one of the school seats and then left the room for some purpose. The defendant then said to the plaintiff: "You are going to walk right home with me, a big girl like you ought to know better than to carry on like this." The plaintiff did not walk home with the defendant. Her mother got another teacher to take her home. When they arrived there her mother put her in bed and she stayed there the remainder of that day. Also, the jury could have found that following the blow given her by the defendant the plaintiff was unable to stand up straight; that she suffered severe pain in the region of the left kidney; and that she was kept in bed most of the time.

On May 22, the plaintiff's mother took her to Dr. Powers of Rutland city, and he examined her. He testified that the plaintiff was brought in to him, that she was unable to stand; that she was pulled over to her left side; "she was pretty near knotted up, pretty well drawn up." He found that she had a hot, spastic left side, *i.e.*, some kind of inflammatory process in the left latissimus dorsi muscle; that there was more temperature in that muscle than there was in the muscle on the other side; that in an injury of that kind where there is an inflammatory reaction pain is one of the symptoms of that reaction; that pain comes because nature tries to set the muscle in fixation.

He called Dr. Hinds, a physician and surgeon of Rutland city, in consultation on the case. Dr. Hinds made an independent examination of the plaintiff. He testified: "She was lying in bed and complained of pain in her lower back, mostly on her left side; she had a tender point on the left side of the spine, the lower part of the back. She complained it hurt to touch it, she said it hurt to move, she was unable to straighten up straight on her feet on account of the pain in her back." He thought "the pain came from the muscle area, from the spasm of the muscle, caused her to want to stoop over." He testified further that her tenderness and the slight amount of swelling she had when he examined her was "right over the left kidney."

Dr. Powers and Dr. Hinds decided that the proper treatment was to put the plaintiff's back in fixation so that she could not move. On May 25, they immobilized her back by putting her in

a plaster jacket that extended from her arm pits downward to about a quarter or half the length of her legs.

After she was placed in the jacket she stayed in bed until June 14, when it was removed. At that time the muscle had returned to its normal softness and performed comparative normal function. All the doctors testified that the injury of the plaintiff was caused by an outside force, such as a blow, received in the region of the left kidney.

It appears from the evidence that the area over the kidneys is one of the tender parts of the human body and that it is especially susceptible to blows.

The evidence is conflicting as to whether the plaintiff suffered from her injury after the plaster jacket was removed, and, if so, the extent of such suffering. However that may be, it is not necessary to consider the evidence on that question in our disposition of the case, and we do not pass upon it.

The defendant attempted to justify her punishment of the plaintiff. She testified that the plaintiff was not attending to her work at the blackboard but turned around and grinned at the class as though she did not have her mind on her work; that she (defendant) had an arithmetic book in her hand with her finger between the leaves, ''and I just took— and I said 'Beverly, turn around and pay attention, put your mind on your work,' with the book like this, book in my hand, I tapped her on the shoulder.'' She testified further that after the plaintiff went to her seat she did not cry; that she was not crying when she went out at recess, and that she walked out as she ordinarily walked in the schoolroom; that when she (defendant) went to the cloak room after the fourth grade was dismissed the plaintiff was sitting on the floor but she was not crying; that the plaintiff walked from the cloak room in to the schoolroom and no one helped her to walk.

It is the law in this State, and in most of the states, that a school teacher has the right, when necessary to maintain discipline, moderately to chastise his pupils; but if the punishment is excessive or improper the teacher is guilty of an assault and battery.

In *Lander* v. *Seaver*, 32 Vt. 114, 123, 76 A. D. 156, a leading case, this Court said:

''The law as we deem it to exist is this: A schoolmaster has the right to inflict reasonable corporal punishment. He must

exercise reasonable judgment and discretion in determining when to punish and to what·extent. In determining upon what is a reasonable punishment, various considerations must be regarded, the nature of·the offense, the apparent motive and disposition of the offender, the influence of his example and conduct upon others, and the sex, age, size and strength of the pupil to be punished. Among reasonable persons much difference prevails as to the circumstances which will justify the infliction of punishment, and the extent to which it may properly be administered. On account of this difference of opinion, and the difficulty which exists in determining what is a reasonable punishment, and the advantage which the master has of being on the spot to know all the circumstances, the manner, look, tone, gestures and language of the offender (which are not always easily described), and thus form a correct opinion as to the necessity and extent of the punishment, considerable allowance should be made to the teacher by way of protecting him in the exercise of his discretion. Especially should he have this indulgence when he appears to have acted from good motives and not from anger or malice. Hence the teacher is not to be held liable on the ground of excess of punishment, unless the punishment is *clearly* excessive and would be so held in the general judgment of reasonable men. If the punishment is thus *clearly* excessive, then the master should be held liable for such excess, though he acted from good motives in inflicting the punishment, and in his own judgment, considered it necessary and not excessive. But if there is any reasonable doubt whether the punishment was excessive, the master should have the benefit of the doubt.''

 The defendant discusses in her brief the credibility of the witnesses and the weight of the evidence. These questions are not for our consideration on review. We can pass only on the tendency of the evidence. If there is evidence which fairly and reasonably tends to support the verdict, we cannot say that the court below failed or refused to exercise its discretion or abused it when it denied the defendant's motion. Although the defendant testified that she did not strike the plaintiff except by tapping her on the shoulder with a book, the jury did not have to believe her testimony.

 The jury could have fairly and reasonably found from the evidence that the defendant struck the plaintiff a severe blow on the tender part of the body over the left kidney with the

edge or corner of a book, and that such blow caused the injury from which the plaintiff suffered. Also, the jury could have found that, in the judgment of reasonable men, considering the nature of the offense of the plaintiff for which she was punished, and her sex and age, that her punishment was not reasonable, but was improper, unwarranted, and excessive. In fact, we think the jury could have found that the blow that injured the plaintiff was struck in anger rather than as punishment. Nor, on the evidence, can it be said that the verdict was excessive. The court below committed no error in denying the motion to set the verdict aside.

■ The court instructed the jury on the question of exemplary damages. The defendant excepted on the ground that there was no evidence in the case on which the jury could find that the force, if any, was wilful, malicious, or oppressive.

We think that, taking the evidence in the light most favorable to the plaintiff, the jury could have found that the conduct of the defendant in striking the plaintiff was wilful and in wanton disregard of the rights of the plaintiff. This exception is not sustained.

*Judgment affirmed.*