428 F.2d 743
 Loreen C. DeMETRO, David W. Greene, Joseph R. Knock, and
Israel Schecter, et al., Plaintiffs-Appellants,
v.
Mitchell I. GINSBERG, Administrator, Human Resources
Administration of the City of New York, Jack Goldberg,
Commissioner, Department of Social Services of the City of
New York, Mario Procaccino, Comptroller of the City of New
York, John V. Lindsay, mayor of the City of New York, and
The City of New York, Defendants-Appellees.
 No. 586, Docket 33917.
 United States Court of Appeals, Second Circuit.
 Argued March 18, 1970.
Decided June 22, 1970.
 
 Ernest Fleischman, New York City (Delson & Gordon, Ralph P. Katz, Martin R. Ganzglass, New York City, on the brief), for plaintiffs-appellants.
 Eric J. Byrne, New York City (J. Lee Rankin, Corp. Counsel for the City of New York, Alfred Weinstein, New York City, on the brief), for defendants-appellees.
 Before MOORE and FEINBERG, Circuit Judges, and BONSAL, District judge.*
 FEINBERG, Circuit Judge:
 
 
 1
 This is an appeal from an order of the United States District Court for the Southern District of New York, Milton Pollack, J., dismissing an action under the Civil Rights Act brought by four employees of the Department of Social Services of the City of New York. The basis of the action was the deduction by the City from the pay check of each plaintiff of a sum equivalent to a half-day's pay, amounting in each case to about 13 or 14 dollars. Plaintiffs claim that this was disciplinary action, unconstitutionally imposed. Defendants, who were various city officials at the time, maintain it was nothing of the sort, but merely a deduction of pay for time concededly not worked.
 
 
 2
 The controversy apparently arose as follows: In the summer of 1968, a dispute arose between the Department of Social Services and the Social Service Employees Union over the total number of cases each caseworker should be required to handle. At the time of the disputed deductions, the Department had instituted the summer work schedule; the normal summer work day ended at 4:00 P.M., and a rotation system was established at welfare centers, assigning different employees on different days to work an additional hour from 4:00 to 5:00 P.M. Each employee worked this additional hour one afternoon every two weeks. Two of the plaintiffs, who are union delegates, organized a job action to compel the City to provide additional personnel to handle cases in excess of the 60 caseload limitation in the applicable bargaining agreement. This action included a refusal either to handle cases above that limit or to work past 4:00 P.M. on the scheduled days. By the time the labor dispute was eventually settled, various employees had failed to work the additional hour. Not surprisingly, in their next pay check each of those employees received a notice informing him of a deduction in pay. A typical notice provided:
 
 
 3
 Unauthorized absence 4-5 P.M. on July 2, 1968, leave without pay, $14.04.
 
 
 4
 The notices were all identical, except for the dates of absence and the amount of pay deducted, which varied according to the facts of the individual case. The deduction in each case equalled one-half of one day's pay.
 
 
 5
 There is apparently no dispute about these facts, although the parties characterize their legal effects in different terms. Appellants claim that the City subjected them to disciplinary action without prior notice or hearing, thereby violating their rights to due process and equal protection of the laws and subjecting them to involuntary servitude.[1] These claims, as applied to a single 14 dollar pay deduction for each employee, have a wildly extravagant ring about them, but we need not deal with that. From undisputed facts and from matters we may judicially notice, it is clear that the City did not resort to disciplinary action in the sense claimed by appellants.
 
 
 6
 The unauthorized absences rendered the employee subject to deductions of pay for time not worked. Under section 1103-1.0, subd. (1) of the Administrative Code of the City of New York, the head of an agency is empowered 'to make ratable deductions from the salaries and wages of subordinates on account of absences from duty without leave.' Indeed, appellants concede as much, but argue that the amount deducted should have been only one hour's, not one half-day's, pay. The Department apparently used the applicable Leave Regulations as a basis for deducting a half-day's pay for one hour of unauthorized absence. Those Regulations provided that 'the normal unit of charge against annual leave allowance for vacation shall be one-half day,' and permitted smaller units of charge for time lost due to tardiness, religious observances and certain specified union activities.[2] The Regulations also authorized agency heads to make other exceptions, and in another section[3] had similar provisions regarding units for computation of sick leave. The justification offered for the standard unit of half-day charge is the administrative one of simplicity and reducing bookkeeping burdens.
 
 
 7
 The City also had other options open in response to a refusal to work the allotted summer hour. Section 1103-1.0 of the Administrative Code also contains disciplinary provisions,[4] as do section 75 of the New York State Civil Service Law, McKinney's Consol.Laws, c. 7, and the Personnel Handbook of the Department of Social Services. Had the City followed those steps the case before us would be different, although we express no view on whether substantial constitutional questions would thereby be raised.[5] Whatever may have been the situation when plaintiffs filed their suit, it is now clear that the Department has absolutely disclaimed any intention to discipline, and the notice sent to the individual employees is entirely consistent with this position, limiting the deduction to that characterized as 'leave without pay.'[6] The controversy between the parties is thus no more than whether the Department may apply the standard half-day leave deduction to this situation or whether it must be more precise in the deduction, as to which we express no view. The Department, relying on the Regulations already cited, maintains that what it did was quite proper;[7] appellants strenuously urge that it was not. The dispute hardly raises a federal question much less the dramatic constitutional claims pressed upon us.
 
 
 8
 Accordingly, we will not reverse the decision of the court below. We realize from the district court's citation of Bradford Audio Corp. v. Pious, 392 F.2d 67, 72 (2d Cir. 1968), that the complaint was dismissed for lack of jurisdiction under the Civil Rights Act and that the basis of dismissal was the personal versus property right jurisdictional test, upon which plaintiffs level a broadside attack, citing principally the district court decisions in Kelly v. Wyman, 294 F.Supp. 887, 893 (S.D.N.Y.1968). However, upon these facts it is not necessary to discuss that jurisdictional question or to compare the later decision of Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), with Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970), or to assess the effect of the Supreme Court's affirmance of Kelly, sub nom. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). This case on the clear facts simply does not raise a substantial federal question, and plaintiffs were required to seek their relief in another forum.[8]
 
 
 9
 Judgment of dismissal affirmed.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 The equal protection argument is based upon New York Labor Law 193 (McKinney's Consol.Laws, c. 31, Supp.1969), which allegedly prevents private employers from deducting a fine from the salary of an employee. The involuntary servitude argument is apparently based on the dubious proposition that appellants had to work to pay off their 'fines.'
 
 
 [2]
 Section 2.5, New York City Department of Personnel Leave Regulations for Career and Salary Plan Employees
 
 
 [3]
 Id. at 3.3
 
 
 [4]
 Except as otherwise provided by law, every head of an agency is empowered:
 
 
 [2]
 In his discretion, to cause deductions to be made from the salaries, compensation or wages of subordinates of such agency, not exceeding thirty days' pay, as a fine for delinquency or misconduct
 
 
 [3]
 In his discretion, to suspend for not more than one month without pay, any subordinate pending the hearing and determination of charges against such subordinate, or the making of any explanation, as the case may be. If the subordinate so suspended be removed, he shall not be entitled to salary or compensation after suspension. If he be not so removed, he shall be entitled to full salary or compensation from the date of suspension to the date of reinstatement, less such deduction or fine as may be imposed
 
 
 [5]
 See Coleman v. Ginsberg, 2 Civ., 428 F.2d 767, for a fuller discussion of these procedures
 
 
 [6]
 On its facts and in the context in which the case comes to us, it is distinguishable from International Union of Electrical Workers v. General Elec. Co., 407 F.2d 253 (2d Cir.), cert. denied, 395 U.S. 904, 89 S.Ct. 1742, 23 L.Ed.2d 217 (1969), where the writer of this opinion dissented. See 407 F.2d at 264-66
 
 
 [7]
 The Department also cites its Personnel Handbook, which similarly provided that the standard minimum unit chargeable to annual leave credit was one half-day
 
 
 [8]
 An Article 78 proceeding would have been an obvious remedy. See also Toscano v. McGoldrick, 300 N.Y. 156, 158, 89 N.E.2d 873 (1949). We also raised at oral argument the possibility that the applicable labor agreement might afford some relief to resolve this tag-end issue growing out of a stale labor dispute. In a post-argument letter, appellants inform us that the labor agreement does not cover 'disciplinary action'; since we have held as a matter of law that disciplinary action was not involved here, that point is now irrelevant. Neither party has discussed whether the labor agreement furnishes a remedy for an improper construction or application of the Leave Regulations by the Department