Molly **FARRELL**, a minor with her next friend and parent Marjorie Farrell, Plaintiff-Appellant,

v.

Lewin **JOEL**, Jr., Superintendent of Schools, Clinton, Connecticut; Rexford H. Avery, Principal, the Morgan School; Charles J. Poole, Chairman, Arthur L. Jennings, Neil E. Jensen, Edith Mac-Mullen, Kevin W. Leary, Ernest C. Burnham, Jr., and Robert L. Sheehan, Board of Education, Defendants-Appellees.

**No. 313, Docket 35347.**

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1970.

Decided Jan. 20, 1971.

R. David Broiles, New Haven, Conn., for plaintiff-appellant.

John Crosskey, Hartford, Conn. (Day, Berry & Howard, Hartford, Conn., on the brief), for defendants-appellees.

Before LUMBARD, Chief Judge, FEINBERG, Circuit Judge, and CLARIE, District Judge.*

FEINBERG, Circuit Judge:

Molly Farrell, a high school sophomore, appeals from an order of Judge M. Joseph Blumenfeld in the United States District Court for the District of Connecticut which denied injunctive relief against her suspension from high school and held that the suspension did not violate her constitutional rights. For the reasons stated below, we affirm.

The challenged suspension arose out of a student demonstration at The Morgan School, Clinton, Connecticut. On May 14, 1970, appellant and approximately 30 other students congregated outside the school's administrative offices in what Judge Blumenfeld called "a group 'sit-down.'" Its purpose was to protest the suspension of three fellow students. When the group refused to leave, Principal Rexford Avery read to them Rule 15(c) of the Clinton Board of Education Policies:

> Pupils who walk out of school, sit in, damage property, harass teachers will be dealt with as follows:
>
> \*   \*   \*   \*   \*   \*
>
> 2. Pupils who walk out or sit in will be given the opportunity to return to their classes and appoint designated leaders to meet with the school officials to discuss and seek solutions to the problem.
>
> 3. Pupils who fail to heed the warning to return to classes and continue the walk-out and/or sit-in, will be suspended at once.

The principal then requested the group to go to classes and to designate leaders as provided in Rule 15(c). Some of the students left, but 17 of the demonstrators refused to disperse because they wanted the entire student body to participate in the choice of leaders. The assistant to the principal put it this way in his testimony before Judge Blumenfeld:

> They told me that they were all leaders, they were all going to talk, they didn't know what their demands were and that they weren't going to move.

During a subsequent morning break, more students crowded into the area until there were approximately 300. Emotions were running high, both for and against the demonstrators, and Principal Avery called an assembly to prevent the possibility of violence. Avery and some of the demonstrators spoke at the assembly. After the speeches, the students elected appellant and several others as "leaders."

Appellant attended classes as usual on May 15 and Monday, May 18. On Monday afternoon, the elected leaders met with school officials who informed them that the whole matter of the "sit-down" would be presented to the Board of Education at its regular Monday evening meeting. The demonstration was, in fact, discussed during the open session of that meeting. The Board then voted in closed (executive) session to suspend appellant, among others, for a period of 15 school days. On June 1, the United States District Court for the District of Connecticut, Robert C. Zampano, J., issued a temporary restraining order against the suspension. The order was continued by agreement of the parties and appellant ultimately was suspended for only ten school days.

The gravamen of appellant's complaint is that the manner in which she was suspended did not afford her procedural due process. She argues that she was entitled to written notice of the charge against her and then a hearing before an impartial official at which she could confront and cross-examine any adverse

* Of the District of Connecticut, sitting by designation.

witnesses as well as present a defense concerning punishment.

Appellant assumes that her complaint states a viable action under the Civil Rights Act, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343(3). It is a measure of the change in the law over the past decade that the defendants and the district court did not question this assumption. As Professor Charles Wright has put it, we "recognize the fact that, for good or for ill, the Constitution has come to the campus." The Constitution on the Campus, 22 Vand.L.Rev. 1027, 1033 (1969). However, the major cases have dealt with such severe sanctions as expulsion, e. g., Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed. 2d 193 (1961); Wasson v. Trowbridge, 382 F.2d 807 (2d Cir. 1967), rather than with milder discipline such as suspension for a short time, although there have been a few instances of litigation over the latter. See, e. g., Baker v. Downey City Board of Education, 307 F.Supp. 517 (C.D.Cal.1969); Stricklin v. Regents of University of Wisconsin, 297 F.Supp. 416, 419–421 (W.D.Wisc.1969), appeal dismissed as moot, 420 F.2d 1257 (7th Cir. 1970); cf. Schwartz v. Schuker, 298 F.Supp. 238 (E.D.N.Y.1969). In the United States District Court for the Western District of Missouri, the four district judges took the extraordinary step of convening an *en banc* court, which promulgated a General Order on Judicial Standards of Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Education, 45 F.R.D. 133 (W.D. Mo., 1968). The *General Order* apparently assumes that even "lesser disciplinary procedures" may fall afoul of constitutional commands, but lists "minimal procedural requirements" of due process only as to "severe cases of student discipline * * * such as final expulsion, indefinite or long-term suspension, dismissal with deferred leave to reapply

* * *." *Id.* at 142, 147. This court does not seem to have ruled on the precise issue, see Madera v. Board of Education, 386 F.2d 778 (2d Cir. 1967), cert. denied, 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968), but we will assume arguendo that due process applies when a publicly financed educational institution—whether college or high school—imposes a mild, as well as a severe, penalty upon a student.

■ However, the inquiry does not end with this assumption; it only begins. Due process does not invariably require the procedural safeguards accorded in a criminal proceeding. Rather, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria and Restaurant Workers, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). See Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960) (" 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts.") We believe that in these school discipline cases the nature of the sanction affects the validity of the procedure used in imposing it. See Wright, *supra*, 22 Vand.L.Rev. at 1070–71; A Statement of the Rights and Responsibilities of College and University Students, 1 Human Rights 140, 153 (1970). Expulsion would be at one extreme. Near the end of the other might be a penalty of staying after school for one hour for "unexcused tardiness to class or study hall";[1] in such an instance, written notice and cross-examination of adverse witnesses would require inappropriate time and effort. Of course, as one approaches the center of the two extremes of major and minor discipline the line becomes shadowy, but the difficulty of drawing it does not eliminate the distinction between the two. Moreover, the general age level of the student group involved might affect

1. Morgan School Student Handbook 17 (1969).

determination of the constitutional issue. A "demonstration" in kindergarten, after all, is not the same as one in college.

■■ Turning to what actually happened here, it is quite clear that appellant had notice of Rule 15(c) and the consequence of violating it, which was immediate suspension. Not only had the Rule been posted in classrooms and publicized in the local press, but Principal Avery read it to the demonstrators. Moreover, there was no significant dispute over whether appellant violated the Rule. She admitted at the hearing before Judge Blumenfeld that the sit-in disrupted school activity, that she knew she was violating the Rule by not leaving when told to, and that she knew she might be suspended and was prepared to accept that result. On these facts, therefore, no constitutionally-required purpose would have been served by more formal procedures, except perhaps for determination of the penalty. As to that, appellant testified that Principal Avery said the demonstrators would be suspended for only five days,[2] but she knew of the possibility of a penalty of three to ten days suspension for even a first offense.[3] The trial judge impliedly held that appellant knew that she could have appeared before the Board of Education at the public hearing, although appellant disputes this. The record is ambiguous and, on these facts, we would not regard the procedure for contesting the penalty as of controlling constitutional significance. Under all of the circumstances, we do not believe that appellant was deprived of due process.

This does not mean that we approve of the way this dispute has handled by either side. The Board did impose a penalty of 15 days (later reduced to ten) although the Student Handbook appears to limit to ten days the sanction for a first offense. Moreover, there is no clear procedure by which a student or his parent can either contest a charge that he has violated a rule, when material facts are in dispute, or argue against a proposed, or already imposed, penalty. On the other hand, appellant's actions were clearly improper and prompt discipline of some sort was justified. We are aware that problems of this sort are likely to recur, and may arise again in a context when the facts as to the alleged violation are more sharply at issue so that the school's procedure for determining them would be more significant. We would hope, perhaps wistfully, that litigants and counsel on both sides would keep several things in mind before the rush is made to the federal courts with constitutional banners waving high. We have recently pointed out, see Negron v. Wallace, 436 F.2d 1139 (2d Cir., 1971), that the burden of litigation in the federal courts under the Civil Rights Act has increased in startling fashion, and that a flood of meritless cases harms the worthy one. Cf. DeMetro v. Ginsberg, 428 F.2d 743 (2d Cir. 1970) (claim that $14 pay deduction subjected employee to involuntary servitude). Moreover, the State of Connecticut has not been slow to protect the rights of students when serious discipline has been meted out,[4] and we would not expect its courts, more attuned than we are to local problems, to be inhospitable to claims of unfair treatment. Finally, in cases of minor discipline particularly, parent, student, and administrator should remember that substitution of common sense for zealous adherence to legal positions is not absolutely prohibited. Certainly, possible unfairness could be avoided in the future by promulgation of detailed, fair and reasonable procedures to be used when discipline less serious than expulsion is proposed; this would give those affected a fair opportunity to question whether an alleged violation of a school

---

2. The principal denied this.

3. Morgan School Student Handbook 17 (1969).

4. Conn.Gen.Stat.Rev. § 10–234 (1958) provides procedures for cases of expulsion.

rule actually occurred and what penalty, if any, would be appropriate.

 Judgment affirmed.[5]

LUMBARD, Chief Judge (concurring):

I concur.

However, it would seem appropriate to suggest to the district judges that perhaps one way of encouraging plaintiffs to seek their remedies in a state court, where they more properly belong and where, as in this case, it is conceded that they could have gone, would be to deny a temporary restraining order and refuse to give these matters any preference, to which they are clearly not entitled. That relief may be available in the state courts is enough reason to deny temporary relief in federal courts, since failure to do so could not cause irreparable harm if another forum is also available.

---

5. Appellant also claims that her suspension had a significant chilling effect on the exercise of first amendment rights by other students. However, the substantive portions of Rule 15(c) involved here are reasonable. The first amendment does not guarantee the right to substantially

disrupt the operation of a school. See Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 514, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); cf. Powe v. Miles, 407 F.2d 73, 85 (2d Cir. 1968).