**Jose DeJESUS, by and through his mother and next friend, Maria DeJesus, individually and on behalf of all others similarly situated**

v.

**Phillip E. PENBERTHY, Chairman, Norwalk Board of Education, et al.**

**Civ. A. No. B–504.**

United States District Court,
D. Connecticut.

June 2, 1972.

72

Charles J. Tuohy (Norwalk Legal Services), South Norwalk, Conn., Steven P. Hershey, Stamford, Conn., for plaintiffs.

1. The action was begun with an order to the above named defendants to show cause why a temporary restraining order should not be issued. An evidentiary hearing on the motion for a TRO was held on May 17 and 22. At the conclusion of the hearing on the motion, both sides agreed that the record has been sufficiently developed to permit final adjudication on the merits of all issues except those that might require convening of a three-judge court pursuant to 28 U.S.C. § 2281. See Fed.R.Civ.P. 65(a) (2). Since the case can be resolved without reaching the potential three-judge court issue—the constitutionality of the state statute authorizing local school board expulsion, Conn.

Arthur J. Goldblatt, Corporation Counsel, South Norwalk, Conn., for defendants.

MEMORANDUM OF DECISION

NEWMAN, District Judge.

Jose DeJesus, age 15, has brought this Civil Rights Act suit under 42 U.S.C. § 1983 against the members of the Norwalk Board of Education and the Superintendent of Schools, challenging his expulsion from the 9th grade.[1] Jurisdiction is based on 28 U.S.C. § 1343(3). His principal complaint is that the procedures used by the Board denied him his Fourteenth Amendment rights to due process of law.

The incident that led to plaintiff's expulsion occurred at the Brien McMahon Annex to the Norwalk High School on March 10, 1972. The undisputed fact is that plaintiff punched Richard Stevens, another student. The circumstances, as developed at the Board hearing, are in dispute. Stevens and Wilfredo Gutierrez, another student, were quoted by school officials as reporting that plaintiff hit Stevens for no reason at all. Stevens also reported that after the first blow, plaintiff hit him again and then chased him up a flight of stairs and hit him a third time. According to the fairly detailed minutes of the hearing, the plaintiff told the Board "It was not like that." According to the minutes, the plaintiff "stated he tapped a boy on the shoulder to ask for a pencil, and

Gen.Stat. § 10–234, there is no need for further hearings.

The complaint named as an additional defendant the State Commissioner of Education, but by agreement of the parties, the order to show cause was not served on him, since no temporary injunctive relief was being sought against him. The Commissioner has not appeared at the hearing, but since the Court's disposition of the case concerns only issues between the plaintiff and the local school board, his absence as a party is of no consequence, and the Court, *sua sponte*, drops him as a party in this suit. Fed.R.Civ. P. 21.

when the boy put his hands up, thinking he was about to be hit, Jose hit the boy. He said the student (Richard) wanted to know his name, and began calling Jose names as he went up the stairs. That is when Jose hit Richard again." In response to a question from a Board member, Jose said Richard had swung first.

On the day of the incident, Joseph DeVita, Principal of the school, sent to the plaintiff's mother a letter advising that "your son Joseph [sic], without provocation, did assault another student." The letter further advised that the plaintiff was being suspended for a period not to exceed 30 days "under the Board of Education by-law 5114C." The letter specifically advised Mrs. DeJesus that she and her son were entitled to be represented by an attorney. On March 14, the Superintendent wrote plaintiff's mother, confirming the suspension action. On March 15, the Superintendent wrote plaintiff's mother of the date and place for a hearing. Apparently through a lack of understanding on the part of Mrs. DeJesus, she and her son failed to attend at the scheduled time. The Board then arranged a new hearing date, and the hearing was held on April 30. Throughout the correspondence from the school officials, repeated reference was made to the right of plaintiff and his mother to have an attorney present at the hearing.

At the hearing Thomas Rietano, Housemaster of the Brien McMahon Annex, read to the Board statements he and Mr. DeVita had taken on the day of the incident from Stevens, Gutierrez and the plaintiff. Neither Stevens nor Gutierrez testified before the Board. Plaintiff's statement, quoted to the Board, admitted punching Stevens but alleged this was in response to Stevens' putting his fist up.

Concerning the Board's action and the basis for it, the minutes disclose the following. Early in the hearing Mr. Rietano began to discuss the plaintiff's prior school record, but was interrupted by the Norwalk Assistant Corporation Counsel, Mr. Goldblatt, who advised that discussion should be limited to the incident in question. Later on, when another Board member inquired about plaintiff's record, the Board chairman "then requested, on advice of counsel, that this type of discussion be reserved for executive session, and then asked staff members, except for Mr. DeVita and Mr. Rietano, along with Mrs. DeJesus and Jose, to leave the room." In the ensuing discussion, the Board was informed of a previous incident in which the plaintiff had been suspended for taking a bottle of soda from the faculty room. Later Mr. Goldblatt pointed out to the Board what he called the "inconsistency" between provisions 5114b and 5114c of the Board's policies.[2] The former concerns

2. Section 5114b provides:
Legal provisions governing expulsion
a. The Board of Education may expel a pupil from school only if "after a full hearing" the Board finds that he is guilty of "Incorrigibly bad conduct."
b. The parent or guardian must be notified at least five days prior to the date of such a hearing.
c. Whenever a child under 16 is expelled from school, the Board of Education must notify the parents or guardian of the child and the State Board of Education within five days of the effective date thereof.
Such notice should give:
1. The date of the action of the Board.
2. The name, age and grade of the child.
3. The name and address of the parent or guardian.
4. The name of the school.
5. The effective date of the expulsion.
6. The period for which the pupil is expelled.
7. The name of any agency to which the pupil is referred for further attention.
Section 5114c provides:
Any student who has been found involved in assaulting any other student or person or persons within the school building or on the school premises will be suspended from school.
Within the limits of statutory regulations, all students who have been suspended for assault will be brought to the attention of the Board of Education. These students wil be granted a hearing with the Board of Education and, if the evidence at such hearing supports the basis for the

expulsion for "incorrigibly bad conduct;" the latter concerns expulsion for "assault." Mr. Goldblatt then advised the Board that "in order to expel him, he would have to be found guilty of incorrigibly bad conduct." When the Chairman asked counsel about the assault, Mr. Goldblatt replied that "a judge would rule in favor of the student." Immediately thereafter a Board member moved to expel the plaintiff for the remainder of the school year. The motion was adopted by a vote of three to two. Mr. Goldblatt then advised the Board that a letter should be written to the State Commissioner of Education, covering the points set forth in section 5114b, and stating that "the Board found this student to be guilty of incorrigibly bad conduct."

By letter of April 12, the Superintendent notified the Commissioner that the Board "found that the student assaulted another student in the school, without provocation, and that his past record in the Norwalk school system shows him to be guilty of incorrigibly bad conduct."

■■ The procedural safeguards of due process must be accorded to a student whenever a governmental body acts to deny him the opportunity for an education. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.), cert. denied 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961), and that fundamental principle has been accepted in this Circuit, Farrell v. Joel, 437 F.2d 160 (2d Cir. 1971); Winnick v. Manning, 460 F.2d 545 (2d Cir. 1972). The nature of those safeguards is not "inflexible," Cafeteria and Restaurant Workers Union, Local 473, A.F.L.–C.I.O. v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L. Ed.2d 1230 (1961), and their content cannot be derived uncritically from the context of criminal cases, Madera v. Board of Education, 386 F.2d 778 (2d Cir. 1967). The Second Circuit has rec-

ognized in *Farrell* that the validity of procedures depends on the nature of the sanction, with expulsion "at one extreme" of the due process spectrum. 437 F.2d at 162. It has also been suggested that special adherence to procedural fairness is required when the student is a minor. Sullivan v. Houston Independent School District, 307 F.Supp. 1328 (S.D.Tex.1969).

■ Plaintiff challenges the procedures used by the Norwalk Board of Education in several respects, including a lack of confrontation and cross-examination of the witnesses against him and a failure by the Board to specify the grounds on which the expulsion was ordered. The Board in response urges the Court to accord educational authorities considerable discretion in dealing with problems of school discipline and to refrain from substituting the Court's judgment for the Board's. To the extent the Board is referring to a judgment on the merits of a disciplinary matter, their caution should and will be heeded. School authorities must be given discretion within wide limits to find facts and assess their significance. Their knowledge of the context in which discipline problems arise entitles their judgment to be accorded great weight. On the other hand, there is less reason to accord school authorities as much discretion in fashioning procedures. However flexible the contours of due process may be in the context of school disciplinary hearings, the ascertainment of the outer limits is a judicial function under the Fourteenth Amendment. Of course, school authorities must have some discretion in developing fair procedures. Hopefully, they will not assume that the minimum requirements of the Due Process Clause as determined by the courts are all that they as school administrators should determine to accord students as a matter of sound educational policy.

initial suspension, such students may be expelled from school by the Board of Education for a period not to exceed one

school year, or the remaining portion of that school year.

At least in the context of a school discipline hearing, the issues of confrontation and cross-examination involve three different questions. The first is whether the fact-finder should have first-hand testimony on which to base a decision. If the eye-witnesses are to be heard in person, then the next question is whether they must testify with the accused student present. The third question is whether these witnesses should be subject to cross-examination by the accused student or by his counsel. The distinctions were recognized in *Dixon*, where the Court ruled that as to a charge of misconduct, "easily colored by the point of view of the witnesses," the constitutionally required procedure must give the Board "an opportunity to hear both sides in considerable detail," even though cross-examination is not always required. 294 F.2d at 159.

 The Board did not have an adequate opportunity to determine the facts in this case. The evidence against the plaintiff was presented entirely through the reading of four sentences from an interview with Stevens and two sentences each from interviews with the plaintiff and Gutierrez. These brief bits of hearsay informed the Board that Stevens was hit by the plaintiff, but they left the Board without an adequate basis to resolve the key issue in the dispute: was the admitted assault committed without provocation? Stevens and Gutierrez are quoted as saying the plaintiff punched "for no reason." Plaintiff's statement says it was only after Stevens "put his fist up" that plaintiff hit him. At the hearing plaintiff also said that Stevens had swung first. There was also a dispute as to the punch thrown on the stairs. Stevens is quoted as saying plaintiff just ran after him and hit him again. Plaintiff said at the hearing that he did so only after Stevens began calling him names.

 Whether Stevens did swing first or whether he simply "put his fist up" in a manner that gave plaintiff reason to think he was about to be hit by Stevens, and whether name-calling provoked the punch on the stairs are factual matters the Board could not fairly resolve without hearing directly from the boys. The peril of relying on hearsay versions is underscored by the fact that Gutierrez testified in Court and presumably would tell the Board that the incident occurred according to plaintiff's version, and not Stevens'. This is not to suggest that adherence to the hearsay rule is an invariable requirement of the Due Process Clause. But where as here there is a factual dispute on critical issues that will determine the propriety of such a serious penalty as expulsion, due process does require that readily available testimony be presented to the fact-finders in person, at least in the absence of any extenuating circumstances. In this respect, at least, the plaintiff's hearing was constitutionally deficient.

It is a closer question whether due process requires that the witnesses in an expulsion case not only give their testimony to the Board in person, but also do so in the presence of the accused student and subject to cross-examination. Courts have been reluctant to require cross-examination, Dixon v. Alabama State Board of Education, *supra,* although it has been ordered at least once, Esteban v. Central Missouri State College, 277 F.Supp. 649, 652 (W.D.Mo. 1967). *See also* Keene. v. Rodgers, 316 F.Supp. 217 (D.Me.1970). The Second Circuit has stated that cross-examination is not "generally" required, Winnick v. Manning, *supra,* although the District Court opinion in that case said cross-examination is "crucial to a fair hearing" where "credibility and veracity of the complaining witness are at issue with respect to a critical fact." Winnick v. Manning (Civ. No. 13,986 D. Conn. Sept. 29, 1970) p. 12.

In this case the critical issue was whether the undisputed punches thrown by the plaintiff were without provocation. On this issue the versions of the

witnesses were in dispute. In these circumstances cross-examination would certainly have been a preferable way of aiding in resolution of the dispute.

■ I am reluctant to read into the Due Process Clause a requirement of cross-examination in every school discipline hearing even where important facts are in dispute. There may on occasion be circumstances where requiring a youthful witness to tell his version in the presence of the accused student and subject to cross-examination will inhibit the search for truth. Such circumstances are best assessed by the school authorities closest to the situation. In a case such as this, involving expulsion, the accusing testimony should normally be taken in the presence of the plaintiff and subject to cross-examination. However, if upon a convincing showing to the Board by the school authorities, the Board determines that confrontation and even cross-examination will inhibit rather than advance the search for truth, the Board may hear the witnesses (or some of them) out of the presence of the accused student, and, in extreme cases, omit cross-examination by the accused student or his representative. Responsibility for probing the accusing testimony will then rest with the Board. If testimony is taken in the absence of the accused student, he must be furnished with a summary of the testimony he was not permitted to hear. Of course, the Board's conclusion to dispense with confrontation or cross-examination must be based on a good faith decision, supported by persuasive evidence, that the accusing witness will be inhibited to a significantly greater degree than would result simply from the inevitable fact that his accusations will be made known to the accused student. Such a conclusion might also be based on special circumstances concerning the accusing witness.

■ In this case, however, there is nothing to indicate that the Board had any valid basis for dispensing with confrontation of the accusing witness or his cross-examination. Since critical facts were in dispute and since their resolution could lead to expulsion, the lack of confrontation and cross-examination, in the absence of any justifying circumstances, denied plaintiff due process of law.

■ A second infirmity of the Board's procedures in this case concerns the absence of findings. The expulsion vote came on a motion that failed to identify any grounds for the Board's action. It was simply a motion to expel. It has long been a principle of administrative law that agency action must rest on a specified basis "set forth with such clarity as to be understandable." S.E.C. v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947). And reviewing courts must judge the propriety of administrative action "solely by the grounds invoked by the agency." *Ibid.* The need for such rules is illustrated by this case. Plaintiff appeared at a hearing after notification that he was being proceeded against under § 5114c of the Board's regulations. That section concerns only assault. Yet at the hearing, after the plaintiff and his mother were excused, the Board shifted its focus to the question of whether the plaintiff was guilty of incorrigibly bad conduct, the standard of § 5114b of the regulations. Counsel for the Board specifically advised the members that plaintiff would have to be found guilty of incorrigibly bad conduct in order to be expelled.[3] To meet this standard, the

---

3. At oral argument, counsel for the Board retreated from this advice, taking the position that a finding of unprovoked assault would alone provide an adequate basis for expulsion under § 5114c. However that may be, the fact remains that the Board had his earlier advice before them when they made the decision to expel and appeared to act upon it. A dis-

ciplinary order cannot be sustained on grounds that were available to the Board if those grounds were not in fact relied upon. Hammond v. South Carolina State College, 272 F.Supp. 947, 950 (D.S.C. 1967). *See also* S.E.C. v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

school authorities informed the Board of plaintiff's prior record. All this occurred in plaintiff's absence. Moreover, the major prior incident, involving taking of a soda bottle, was a matter plaintiff testified in Court he sharply disputed, yet he had no opportunity to present his side of that earlier incident to the Board or in any other way meet the contention that he was guilty of incorrigibly bad conduct. It was not until after the Board went into executive session that this charge became an issue.

15, 16] Because the Board did not specify the grounds of its decision, the expulsion order might rest on a finding of either assault or incorrigibly bad conduct or both. In view of the advice given the Board by the Corporation Counsel just before the vote to the effect that the assault charge would be ruled upon by a judge in favor of the student and that in order to expel the student he would have to be found guilty of incorrigibly bad conduct, it is most likely that the expulsion order in fact rests solely on an unarticulated finding of incorrigibly bad conduct. Yet on this charge, plaintiff had neither notice nor an opportunity to defend, a plain denial of due process. Dixon v. Alabama State Board of Education, *supra*; Wasson v. Trowbridge, 382 F.2d 807, 812 (2d Cir. 1967). Had the Board made a finding on the assault charge, of which plaintiff did have notice and an opportunity to defend, it could properly have taken into account his prior record in determining whether expulsion was appropriate, providing the plaintiff was given some fair opportunity to meet the allegations of prior misconduct. But the absence of a finding leaves the expulsion order most likely resting on the improper basis of the incorrigibly bad conduct charge. Even the possibility that the Board's decision rests on this improper basis is sufficient to require that it be set aside. *Cf.* Stromberg v. California, 283 U.S. 359, 368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).

Plaintiff alleges the hearing was constitutionally deficient in other respects, but it is not so certain that any of the other complaints are absolute requirements of due process. Since a new hearing is required at which the Board may well decide to adopt different procedures with respect to the remaining points, I think it best to defer rulings on these contentions until the Board has had an opportunity to conduct the new hearing with the enhanced regard for procedural due process which their counsel indicated at argument could be expected in the future. For example, plaintiff complains that he was not told he could bring witnesses to testify in his behalf. The Board responds that notification of a right to counsel is a complete answer because counsel would have known to bring witnesses. However that may be, the Board might wish to consider the practice in use at many schools and colleges of giving accused students a brief written statement of all of their rights at the same time they are notified of the charges against them. Plaintiff also challenges the impartiality of the Board, apparently on the ground that members of the school administration were permitted to remain and participate with the Board in executive session after plaintiff and his mother were excused and while the decision was being reached. Whether or not there is a due process violation presented, the Board may well decide in the future that at least the appearance of impartiality, if not its required substance, is enhanced by making the ultimate decision with only Board members present, or at least excusing those members of the staff who were the witnesses against the accused student.

Plaintiff's additional point on the merits concerns the validity of the state statute under which the Board exercises its expulsion power. Conn.Gen. Stat. § 10–234 authorizes a school board to expel any student found guilty of "conduct inimical to the best interests of the school." The attack on the statute

for vagueness and overbreadth is not insubstantial, *cf*. Soglin v. Kauffman, 295 F.Supp. 978 (W.D.Wis.1968), aff'd 418 F.2d 163 (7th Cir. 1969), and might well require for its resolution the convening of a three-judge court pursuant to 28 U.S.C. § 2281. However, consideration of the need for a three-judge court is not necessary for decision of this case. Section 5114c of the Norwalk Board's regulations, the section most pertinent to the facts of this case, does not suffer from any federal constitutional infirmity. It describes prohibited conduct with the label of "assault," a word of generally understood meaning in the enforcement of the criminal law. No greater precision is required in school discipline matters. Even if § 10–234 is unconstitutionally vague, that would only permit plaintiff to argue that the Norwalk Board has promulgated a regulation without properly delegated authority under state law. I see no reason to exercise discretionary pendent jurisdiction to consider that state law issue.

There is no indication in the record that this Board has acted or threatened to expel students on a finding of "conduct inimical to the best interests of the school." On the contrary this Board has proceeded to define the conduct which it deems to warrant expulsion. And the Court was advised by counsel that the Board is now revising its regulations. In these circumstances it would be inappropriate to anticipate the constitutional issue that would arise if the statutory standard of § 10–234 were the sole basis for an expulsion order. The likelihood of revision of the local regulation also makes it inappropriate to decide now whether the standard of "incorrigibly bad conduct" can survive constitutional attack if it were the basis for an expulsion order.

 There remains the matter of an appropriate remedy. Plaintiff seeks an injunction reinstating him as a student at the Brien McMahon Annex of the Norwalk High School. He relies on the equities arising from the threatened loss of a year of educational credit. The Board has indicated that there is the possibility of the plaintiff securing credit for the 9th grade by a combination of summer courses and supplementary education at a community center. Moreover, the Superintendent testified that plaintiff's return to school would pose a substantial risk of undermining school discipline. Apparently his view is based more on the likely reaction to an expulsion order being successfully challenged than to any substantial fear of the plaintiff's causing injury, although the latter factor cannot be entirely discounted. Weighing all the circumstances, I believe any reinstatement order should be held in abeyance until the Board has had a reasonable opportunity to hold a new hearing. The matter is not unlike a prisoner unconstitutionally convicted whose freedom must await a reasonable opportunity for retrial. Such a course is especially appropriate here since there are so many variables to be considered by the Board at the new hearing. In addition to their decision of the merits of expulsion, under proper procedures, they may well wish to consider, if expulsion is still to be insisted upon, what educational arrangements should be made for the plaintiff to minimize if not eliminate his loss of educational credit for the 9th grade. The Board, having urged upon the Court that it be accorded a wide range of discretion, will now have an opportunity for its sound exercise.

Accordingly, judgment will enter declaring that the expulsion of plaintiff from the Brien McMahon Annex of the Norwalk High School denied him his constitutional rights to procedural due process. Leave is given to the plaintiff to reapply to this Court for an order of reinstatement unless the Board holds a new hearing within ten (10) days from the date hereof. Jurisdiction will be retained.