Lee GONYAW, by his mother and next
friend, Myrtle Gonyaw

v.

John GRAY.

Chris LADUE, by his father and next
friend, Lawrence Ladue

v.

Lawrence MOFFATT, Individually and as
a teacher at Barton Academy.

Civ. A. Nos. 6223, 6564.

United States District Court,
D. Vermont.

June 4, 1973.

Richard S. Kohn, Vermont Legal Aid, Inc., St. Johnsbury, Vt., for Gonyaw.

Richard S. Kohn, Vermont Legal Aid, Inc., St. Johnsburg, Vt., for Ladue.

Parker & Sargent, Morrisville, Vt., for John Gray.

Georgiana O. Miranda, Asst. Atty. Gen., Montpelier, Vt., Downs, Rachlin & Martin, St. Johnsbury, Vt., for Moffatt.

## MEMORANDUM OPINION

HOLDEN, Chief Judge.

The plaintiffs in these cases are 12 year old students who, it is alleged, were subjected to corporal punishment while attending public school. Lee Gonyaw alleges in his complaint that he was punished by the defendant Gray, the principal of the Hardwick Elementary School, by the application of several strokes of a belt to his buttocks, after he admitted sending a "dirty note" to a classmate. Chris Ladue says in his complaint that the defendant Moffatt, a mathematics instructor at Barton Academy, struck him across the face when he questioned a disciplinary decision made by Moffatt.

Both plaintiffs seek damages under 42 U.S.C. § 1983. They also seek a declaratory judgment that 16 V.S.A. § 1161 is unconstitutional. This provision of the Vermont education law authorizes teachers and other school officials to resort to any reasonable punishment, including corporal punishment, in order to maintain discipline in the schools.[1] The defendants in both actions have moved to dismiss the complaints for failure to state a claim upon which relief can be

---

1. Two federal courts faced with essentially this same question have upheld the constitutionality of school district regulations authorizing corporal punishment. Ware v. Estes, 328 F.Supp. 657 (N.D.Tex.1971), aff'd 458 F.2d 1360 (5 Cir.) cert. denied 409 U.S. 1027, 93 S.Ct. 463, 34 L.Ed.2d 321; Sims v. Board of Education of Independent School District No. 22, 329 F.Supp. 678 (N.M.1971). A third court held that while such a regulation does not violate the Eighth Amendment or the due process clause of the Fourteenth Amendment, corporal punishment nevertheless must not be imposed on a child whose parents "have notified the appropriate authorities that such disciplinary method is prohibited." Glaser v. Marietta, 351 F.Supp. 555, 561 (W.D.Pa.1972). While the basis of this latter conclusion is not entirely clear, it should be noted that the underlying Pennsylvania statute authorizes school officials merely to "exercise the same authority . . . over the pupils . . . as the parents . . . may exercise over them." Id. at 556.

granted. The court, on plaintiffs' motion, consolidated the cases for purposes of considering the motions to dismiss and the requests for declaratory relief. The plaintiffs in both actions and the defendant Moffatt have moved for summary judgment in the consolidated actions.

■ The familiar section of the Civil Rights Act under which these actions are founded, 42 U.S.C. § 1983, provides that a person acting under color of state law who deprives another of rights, privileges or immunities secured by the Constitution shall be liable to the injured party in an action at law or suit in equity. It is, of course, essential to recovery in both cases under § 1983 that the plaintiff establish an invasion of federally protected constitutional rights; otherwise there is no federal jurisdiction. Rosenberg v. Martin, 478 F.2d 520 (2d Cir., filed April 27, 1973). Mere tortious conduct does not constitute a deprivation of constitutional rights under the statute. Lovelace v. Leechburg Area School District, 310 F.Supp. 579, 584 (W.D.Pa.1970).

The plaintiffs contend that 16 V.S.A. § 1161 is unconstitutional on its face, and that action taken under color of this statute constitutes a deprivation of fundamental rights, which affords jurisdiction under 42 U.S.C. § 1983. The defendants moved to dismiss on the ground that punishment administered to a student within the state statute does not offend rights protected by the United States Constitution.

The statute provides:

"A teacher or principal of a school or a superintendent or a school director on request of and in the presence of the teacher, may resort to any reasonable form of punishment, including corporal punishment, and to any reasonable degree, for the purpose of securing obedience on the part of any child enrolled in such school, or for his correction, or for the purpose of securing or maintaining order in and control of such school."

■ This statute does not offend the protection against cruel and unusual punishment secured by the Eighth Amendment, since this amendment provides a limitation against penalties imposed for criminal behavior. Powell v. Texas, 392 U.S. 514, 531–532, 88 S.Ct. 2145, 20 L. Ed.2d 1254 (1968); Negrich v. Hohn, 246 F.Supp. 173, 176 (W.D.Pa.1965), aff'd 379 F.2d 213 (3 Cir.); cf. Zwick v. Freeman, 373 F.2d 110, 119 (2d Cir. 1967) (Eighth Amendment not applicable to purely civil penalties). Since neither plaintiff was punished for an offense which was criminal in nature, the Eighth Amendment does not proscribe the conduct assigned to the defendants.

In any event, the challenge of the plaintiffs is directed to the validity of the statute as written. The language of the statute permits resort only to reasonable forms of punishment, within the bounds of moderation, and free from any element of cruelty. Melen v. McLaughlin, 107 Vt. 111, 115, 176 A. 297 (1934). The statute is merely declaratory of the prevailing law of tort liability on the subject of corporal punishment in the schools of the country. Restatement Torts 2d § 147(2) comment f; 47 Am. Jur. Schools § 175; annotation 43 A.L. R.2d 462.

■■ Nor does 16 V.S.A. § 1161 violate the Equal Protection clause of the Fourteenth Amendment. An equal protection inquiry concentrates on "whether a classification is suspect and whether it affords different treatment to persons similarly situated." Developments in the Law—Equal Protection, 82 Harv.L. Rev. 1065, 1132 (1969). Plaintiffs do not contend that the statute involves a suspect classification. Rather, the claim appears to be that the statute has a varying and impermissible effect on differently situated Vermont students. The contention is that the plaintiffs, as public school students, are disadvantaged in comparison with students at the Weeks School, a state maintained juvenile correctional facility. The plaintiffs argue that since the Weeks School is not classified as a public school, it is not

within the reach of 16 V.S.A. § 1161, and, therefore, unlike the plaintiffs, a student at the Weeks School may not lawfully be subjected to corporal punishment.[2] This argument, whatever its factual basis, cannot alter the fact that 16 V.S.A. § 1161 on its face applies to all Vermont schools. If the Weeks School is a school within the meaning of the statute, then corporal punishment is authorized there, as well as in the Hardwick Elementary School. If the Weeks School is a correctional facility and not a school, then the plaintiff and the inmates of the facility are not similarly situated, and the application of different disciplinary standards will be justified.

■■■ The plaintiffs' next argument, that the statute violates the Fourteenth Amendment due process requirement in its substantive aspect, is equally unavailing because "liberty," as guaranteed by the Fourteenth Amendment, does not guarantee the freedom of a school child from the reasonable imposition of school discipline. While under some circumstances gratuitous assault by a person acting under color of state law may entail a violation of Fourteenth Amendment due process, see e. g., Rosenberg v. Martin, supra, 478 F.2d at 520 (2d Cir. 1973) ("We assume that brutal police conduct violates a right guaranteed by the due process clause of the Fourteenth Amendment."), the use of moderate force may be sanctioned to secure important state interests. See e. g., Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). It is, of course, recognized that the state cannot unreasonably interfere with the right of parents to direct the upbringing of their children. Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). This parental right is not without some limitation. See Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1943) (parental interest in upbringing of child is subordinate to state interest in child labor law.)

Of necessity, parents must delegate some disciplinary authority over their school children to the teachers who, among other things, are responsible for maintaining the order necessary to the educational process, despite the inevitable presence in the classroom of some students who would rather be elsewhere. The Vermont Supreme Court has recognized that "(t)he State has a legitimate interest in protecting its educational system from disorderly disruption during classes scheduled for the instruction of students." In re Petitions of Davenport, 129 Vt. 546, 562, 283 A.2d 452, 461 (1971). "School discipline, like parental discipline, is an integral and important part of training our children to be good citizens—to be better citizens." And "school officials should be accorded the widest authority in maintaining discipline and good order in their institutions." Tinker v. Des Moines School District, 393 U.S. 503, 524, 526, 89 S.Ct. 733, 746, 747, 21 L.Ed.2d 731 (1969). Dissenting opinion Black and Harlan, JJ.

The question is whether the authorization of corporal punishment in 16 V.S.A. § 1161 is reasonably related to the legitimate purpose of school discipline. Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1924).

■■■ The plaintiffs contend that the necessary reasonable relation is absent because of the vagueness and overbreadth of 16 V.S.A. § 1161. A statute is void for vagueness if it ". . . either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." Connally v. General Construction Co., 269 U.S. 385,

---

2. See 28 V.S.A. § 1151(d): "Upon his admission, the child shall be subject to the rules, regulation and discipline of the school." Whether the regulation proscribes corporal punishment does not appear. Absent such a provision, it would seem the general law would apply. See Lander v. Seaver, 32 Vt. 114, 123 (1859); Restatement Torts 2d § 153(2).

391, 46 S.Ct. 126, 129, 70 L.Ed. 322 (1926). A statute is void for overbreadth if it offends the principle that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." NAACP v. Alabama, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964).

It is not within the court's competence, nor its proper function to measure the precise relation between corporal punishment and the objectives of order and discipline in the educational process which 16 V.S.A. § 1161 seeks to advance. Nor should the court ". . . pass judgment on the merits of corporal punishment as an educational tool or a means of discipline." Ware v. Estes, 328 F.Supp. 657, 659 (N.D.Tex.1971), aff'd 458 F.2d 1360 (5 Cir.), cert. denied 409 U.S. 1027, 93 S.Ct. 463, 34 L. Ed.2d 321 (1972).

There are, however, several factors present here which limit the extent to which 16 V.S.A. § 1161 may be used to invade the rights of an individual student and his parents. First, the extent to which a teacher may engage in corporal punishment is limited in Vermont by the availability of civil and criminal penalties for its abuse. The statute gives a teacher the right ". . . when necessary to maintain discipline, moderately to chastise his pupils; but if the punishment is excessive or improper, the teacher is guilty of assault and battery." Melen v. McLaughlin, supra, 107 Vt. at 115, 176 A. at 299. Beyond this deterrent, a teacher who exceeds the statutory limits in administering corporal punishment is answerable to the parents of the child, not only in the courts, but also he may be called upon to respond through the school board, the parents' elected representatives. Both community standards and the possibility of civil and criminal sanctions constrain 16 V. S.A. § 1161 from sweeping "unnecessarily broadly" into "the area of protected freedoms."

With respect to the vagueness claim, it is true that the statute, in authorizing the imposition of corporal punishment to secure "obedience," maintain "order," and correct "misbehavior," leaves the teacher with considerable discretion in deciding when to impose such punishment. The statute, however, neither "forbids (nor) requires the doing of an act," within Connally v. General Construction Co., supra, 269 U.S. at 391, 46 S.Ct. at 129, to the extent that arbitrary administration is invited. The statute does not state, for example, that a child who disrupts school order shall be deemed to have committed an offense. Rather, it authorizes the teacher to use "any reasonable form of punishment" to achieve three of the essential, although generally stated, functions of a public school. As indicated above, community participation in school affairs and the possibility of legal action serve to deter the arbitrary imposition of corporal punishment upon students. The mere fact that a statute vests an official with discretion in seeking legitimate objectives does not render that statute void for vagueness merely because the possibility exists that discretion may be abused. There may be borderline cases in which it is difficult to determine where the facts will fall, but such indefiniteness will not condemn the statute. Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Here the exercise of discretion is tempered by real constraints, and remedies for its abuse are readily available.

The plaintiffs' final contention, that 16 V.S.A. § 1161 is deficient on procedural due process grounds, is also unavailing. In determining what procedural safeguards are required before school discipline may be imposed, "the nature of the sanction affects the validity of the procedure used in imposing it." Farrell v. Joel, 437 F.2d 160, 162 (2d Cir. 1971). In the range of disciplinary sanctions, it may be said that expulsion lies at one extreme; minor punishments, such as staying after school, near the other end. Id. While expulsion may ne-

cessitate a formal hearing, to insist on such a procedure before the imposition of sanctions at the other end of the continuum is entirely impractical and "would require inappropriate time and effort." Id. Clearly, ". . . the purposes to be served by [moderate] corporal punishment would be long since passed if formal notice, hearing and representation were required." Sims v. Board of Education of Independent School District No. 22, 329 F.Supp. 678, 683 (N. Mex.1971). The likelihood of the abuse of corporal punishment is minimized by the participation of parents and school boards in school affairs, and by the availability of civil and criminal sanctions against teachers who exceed the limits of moderation. In any event, it is a sanction which simply is not serious enough to require the prerequisite of a formal hearing.

The court concludes, after consideration of each of the plaintiffs' constitutional arguments, that 16 V.S.A. § 1161 provides a framework for the common sense resolution of the day to day problems of school discipline, without violating the constitutional rights of parents or pupils.[3] As Judge Feinberg has observed:

> ". . . in cases of minor discipline, particularly, parent, student, and administrator should remember that substitution of common sense for zealous adherence to legal positions is not absolutely prohibited." Farrell v. Joel, supra, 437 F.2d 160, 163 (2d Cir. 1971).

Since the complaints in both actions fail to state claims of violation of federally protected constitutional rights under 42 U.S.C. § 1983, the defendants' motions to dismiss will be granted. Ab-

sent any other basis for jurisdiction in both actions, the motions for summary judgment and other relief in these actions must be denied. Orders will be entered accordingly.

---

3. This is not to condone actions such as those alleged in Chris Ladue's complaint against the defendant Moffatt. Rather, it is to say that where an administered punishment bears a closer relation to an assault than to a considered act of disci-

pline, an adequate remedy exists within the Vermont courts under 16 V.S.A. § 1161; and within the social context in which 16 V.S.A. § 1161 operates, through action by parents and school board.